UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
JUL 07 2003
CLERK'S OFFICE
DETROIT

TELEFLEX INCORPORATED,

Plaintiff,

-vs-

KSR INTERNATIONAL CO.,

Defendant.

No. 02 74586
Hon. Lawrence P. Zatkoff
Mag. Judge Steven D. Pepe

---

RODGER D. YOUNG  (P22652)
STEVEN SUSSER (P52940)
DAVID J. POIRIER (P62928
Young & Susser, PC
Attorneys for Plaintiff
26200 American Drive, Ste. 305
Southfield, MI 48034
(248) 353-8620

KENNETH J. MCINTYRE (P17450)
L. PAHL ZINN (P57516)
Dickinson Wright PLLC
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226
(313) 223-3500

JAMES W. DABNEY
Pennie & Edmonds LLP
Attorneys for Defendant
1155 Avenue of the Americas
New York, NY  40036
(212) 790-9090

---

## NOTICE OF HEARING

TO:    ALL COUNSEL OF RECORD

PLEASE TAKE NOTICE that Defendant's Motion for Summary Judgment of Invalidity

will be brought on for hearing before the Honorable Lawrence P. Zatkoff, in his courtroom at

231 W. Lafayette, Detroit, Michigan, at a time and date to be determined by the Court.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By _____

Kenneth J. McIntyre (P17450)
L. Pahl Zinn (P57516)
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
(313) 223-3500

JAMES W. DABNEY
Pennie & Edmonds LLP
Attorneys for Defendant
1155 Avenue of the Americas
New York, NY 10036
(212) 790-9090

Dated: July 7, 2003
DETROIT 27706-1 727565

**PUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FILED

JUL 07 2003

CLERK'S OFFICE
DETROIT

TELEFLEX INCORPORATED,

    Plaintiff,

v.

KSR INTERNATIONAL CO.,

    Defendant.

CA No. 02 74586

Hon. Lawrence P. Zatkoff

Magistrate Judge Steven D. Pepe

---

RODGER D. YOUNG (P22652)
STEVEN SUSSER (P52940)
DAVID J. POIRIER (P62928)
Young & Susser, P.C.
Attorneys for Plaintiff
26200 American Drive, Suite 305
Southfield, MI 48034
(248) 353-8620

KENNETH J. McINTYRE (P17450)
L. PAHL ZINN (P57516)
Dickinson Wright PLLC
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
(313) 223-3500

JAMES W. DABNEY
Pennie & Edmonds LLP
Attorneys for Defendant
1155 Avenue of the Americas
New York, NY 10036
(212) 790-9090

---

## MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

Defendant, KSR International Co. ("KSR"), respectfully moves the Court for Summary Judgment of Invalidity, pursuant to 35 U.S.C. §§ 102-103.

This Motion is supported by the Brief in Support of Motion for Summary Judgment of Invalidity, filed herewith, Exhibits 1 through 13 thereto, and accompanying Declarations and Exhibits thereto.

Pursuant to E.D. Mich. LR 7.1(a), KSR has made reasonable efforts to seek the concurrence of counsel in this Motion but concurrence was not obtained.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

By _____
Kenneth J. McIntyre (P17450)
L. Pahl Zinn (P57516)
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
(313) 223-3500

JAMES W. DABNEY
Pennie & Edmonds LLP
Attorneys for Defendant
1155 Avenue of the Americas
New York, NY 10036
(212) 790-9090

Dated: July 7, 2003

DETROIT 27706-1 740229v02

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TELEFLEX INCORPORATED,**

       Plaintiff,

vs.

**KSR INTERNATIONAL CO.,**

       Defendant.

Case No: 02-74586
Hon. Lawrence P. Zatkoff

Magistrate Judge Steven D. Pepe

F I L E D
JUL 07 2003
CLERK'S OFFICE
DETROIT

---

RODGER C. YOUNG (P22652)
STEVEN SUSSER (P52940)
DAVID J. POIRIER (P62928)
Young & Susser, P.C.
Attorneys for Plaintiff
26200 American Drive, Suite 305
Southfield, Michigan 48034
(248) 353-8620

KENNETH J. MCINTYRE(P17450)
L. PAHL ZINN (P57516)
Dickinson Wright PLLC
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226-3425
(313) 223-3500

JAMES W. DABNEY
Pennie & Edmonds LLP
Attorneys for Defendant
1155 Avenue of the Americas
New York, New York 10036
(212) 790-9090

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT OF INVALIDITY**

---

## STATEMENT OF ISSUES

Non-party Technology Holding Company ("THC") is the assignee and sole owner of U.S. Patent Nos. 6,237,565B1 (the "'565 Patent"), 6,305,239B1 (the "'239 Patent") and 6,374,695B1 (the "'695 Patent"). In this action commenced November 18, 2002, THC's alleged licensee, plaintiff Teleflex Incorporated ("Teleflex"), has accused defendant KSR International Co. ("KSR") of selling position-adjustable, vehicular control pedals that allegedly embody THC-owned "patented invention[s]," within the meaning of 35 U.S.C § 271(a).

On April 2, 2003, KSR moved for an Order dismissing this action for lack of subject matter jurisdiction, on the grounds that (a) Teleflex is not a "patentee" having standing to sue under 35 U.S.C. § 281, and (b) "any defect in standing creates a defect in subject matter jurisdiction, necessitating dismissal under Federal Rule of Civil Procedure 12(b)(1)." Lans v. Gateway 2000, Inc., 84 F. Supp. 2d 112, 114 n.6 (D.D.C. 1999), aff'd sub nom. Lans v. Digital Equip. Corp., 252 F.3d 1320, 1328 (Fed. Cir. 2001) ("if a party lacks title to a patent, that party 'has no standing to bringing an infringement action' under that patent") (citation omitted). KSR's motion to dismiss remains pending.

In KSR International Co. v. Technology Holding Co., No. 03-277-KAJ (D. Del., filed Mar. 12, 2003) (the "Delaware Action"), THC has accused KSR of infringing the same three patents as its alleged licensee, Teleflex, has asserted in this action. On April 16, 2003, KSR moved in the Delaware Action for summary judgment of invalidity of each of the THC-owned patents that Teleflex has attempted to assert in this action.

If despite the foregoing, this Court determines to adjudicate the validity of the THC-owned patents that Teleflex has attempted to assert in this action, the following issues are raised by the present motion for summary judgment:

1.   Whether the '239 Patent is invalid under 35 U.S.C. § 102.

2.   Whether the '695 Patent is invalid under 35 U.S.C. § 102.

3.   Whether Claim 4 of the '565 Patent is invalid under 35 U.S.C. § 103.

4.   Whether the '239 and '695 Patents are invalid under 35 U.S.C. § 103.

KSR responds: YES

Table of Contents

Page

STATEMENT OF ISSUES ................................................................................ i

TABLE OF AUTHORITIES ............................................................................ iii

FACTS ............................................................................................................. 1

SUMMARY OF THE ARGUMENT ................................................................ 9

ARGUMENT ................................................................................................... 10

I.      THE '239 PATENT IS INVALID UNDER 35 U.S.C. § 102. ................................ 12

II.     THE '695 PATENT IS INVALID UNDER 35 U.S.C. § 102 ................................. 17

III.    CLAIM 4 OF THE '565 PATENT IS INVALID UNDER 35 U.S.C. § 103 ......... 19

        A.      Scope and Content of Prior Art. ............................................................. 21

        B.      Differences Between the Prior Art and Claim 4 of the '565 Patent .......... 27

        C.      The Level of Ordinary Skill in the Art at Relevant Times. ..................... 28

        D.      Claim 4 of the '565 Patent Recites a Trivial
                and Obvious Variant of Asano ................................................................. 28

        E.      Secondary Considerations. ...................................................................... 35

IV.     THE '239 AND '695 PATENTS ARE INVALID UNDER 35 U.S.C. § 103 ......... 35

CONCLUSION ................................................................................................ 38

DETROIT 27706-1 740281

.

# TABLE OF AUTHORITIES

## CASES

Page(s)

American Hoist & Derrick Co. v. Sowa & Sons, Inc.,
    725 F.2d 1350 (Fed. Cir.), cert. denied, 469 U.S. 821 (1984) ....................................16

Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,
    396 U.S. 57 (1969)...........................................................................................................34

Autogiro Co. of Am. v. United States,
    384 F.2d 391 (Ct. Cl. 1967) ...........................................................................................14

In re Beattie,
    974 F.2d 1309 (Fed. Cir. 1992)......................................................................................29

Burr v. Duryee,
    68 U.S. (1 Wall.) 531 (1864) .........................................................................................14

Celeritas Technologies, Ltd. v. Rockwell Int'l Corp.,
    150 F.3d 1354 (Fed. Cir. 1998)................................................................................12, 17

E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.,
    849 F.2d 1430 (Fed. Cir.), cert. denied, 498 U.S. 986 (1988) ......................................10

Ecolochem, Inc. v. Southern Cal. Edison Co.,
    227 F.3d 1361 (Fed. Cir. 2000)......................................................................................29

Graham v. John Deere Co.,
    383 U.S. 1 (1966)............................................................................................................19

Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,
    336 U.S. 271 (1949)........................................................................................................10

Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.,
    340 U.S. 147 (1950)..................................................................................................33, 34

Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.,
    21 F.3d 1068 (Fed. Cir. 1994)........................................................................................19

Lans v. Digital Equip. Corp.,
    252 F.3d 1320 (Fed. Cir. 2001)....................................................................................... 8

Lans v. Gateway 2000, Inc.,
    84 F. Supp. 2d 112 (D.D.C. 1999), aff'd sub nom.........................................................8

Lear v. Adkins,
   395 U.S. 653 (1969)................................................................................16

Lewmar Marine, Inc. v. Barient, Inc.,
   827 F.2d 744 (Fed. Cir. 1987), cert. denied, 484 U.S. 1007 (1988)...........14

Lincoln Engineering Co. v. Stewart-Warner Corp.,
   303 U.S. 545 (1938)................................................................................34

Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,
   730 F.2d 1452 (Fed. Cir. 1984).................................................................29

Mead Digital Sys., Inc. v. A.B. Dick Co.,
   723 F.2d 455 (6th Cir. 1983) ...................................................................14

Nickerson v. Bearfoot Sole Co.,
   311 F.2d 858 (6th Cir. 1962), cert. denied, 375 U.S. 815 (1963)...............14

Novo Nordisk A/S v. Becton Dickinson & Co.,
   304 F.3d 1216 (Fed. Cir. 2002).................................................................31

Richardson-Vicks Inc. v. Upjohn Co.,
   122 F.3d 1476 (Fed. Cir. 1997).................................................................32

Ryko Mfg. Co. v. Nu- Star, Inc.,
   950 F.2d 714 (Fed. Cir. 1990).................................................9, 16, 19,
                                                                        21, 30, 31,
                                                                        35

Sakraida v. Ag Pro, Inc.,
   425 U.S. 273 (1976)............................................................................33, 34

Sandt Technology, Ltd. v. Resco Metal & Plastics Corp.,
   264 F.3d 1344 (Fed. Cir. 2001).................................................................19

Sanitary Refrigerator Co. v. Winters,
   280 U.S. 30 (1929)..................................................................................14

## STATUTES

35 U.S.C. § 102 ................................................................................ 8, 9, 10, 11, 12, 14, 17, 18, 19, 36

35 U.S.C. § 103 ................................................................................ 8, 10, 19, 30, 31, 32, 35, 37

35 U.S.C. § 271(a) ........................................................................... 14

35 U.S.C. § 281 ................................................................................ 18

## FACTS

KSR International Company ("KSR") is a corporation organized and existing under the laws of Nova Scotia, Canada, having its principal place of business in Ridgetown, Ontario, Canada (Declaration of Larry Willemsen, sworn to July 7, 2003 [hereinafter "Willemsen Decl."] ¶ 2). KSR manufactures and supplies pedal systems, throttle controls, latches, handles, and other components installed as original equipment in various makes of vehicles manufactured by General Motors Corporation ("GM"), Ford Motor Company ("Ford"), DaimlerChrysler Corporation ("Daimler"), and other vehicle manufacturers worldwide. A description of KSR's business may be found at the "web site" associated with www.ksrint.com (Willemsen Decl. ¶ 3).

Non-party Technology Holding Company ("THC") is a corporation organized and existing under the laws of Delaware, having its principal place of business in Little Falls Centre II, 2751 Centerville Road, Suite 310, Wilmington, Delaware 19808 (Declaration of James W. Dabney, sworn to July 6, 2003 [hereinafter, "Dabney Decl."] ¶¶ 2-4 & Exs. 1 - 3). At the time this action was commenced on November 18, 2002, THC was the sole owner of the '565 Patent, the '239 Patent, and the '695 Patent (collectively the "THC Patents") by virtue of a series of assignments[1] including a written "Assignment of Patents" dated September 27, 2002, executed by Teleflex Inc. ("Teleflex") and recorded with the United States Patent and Trademark Office (the "September 2002 Assignment"; see Dabney Decl. ¶ 2 & Ex. 1).

---

[1] As described more fully infra, the alleged "inventions" disclosed in the '239 Patent and the '695 Patent were originally assigned to Claes Johansson Automotive AB, a Swedish entity (Dabney Decl. ¶¶ 11-12 & Exs. 10-11).

1

Teleflex is a Delaware corporation headquartered in Plymouth Meeting, Pennsylvania (Dabney Decl. ¶ 2 & Ex. 1). Teleflex is a direct competitor of KSR in the business of supplying pedal systems to Ford, GM, Daimler, and other vehicle manufacturers.

<u>Adjustable Pedal Assemblies</u>

This case concerns position-adjustable vehicle pedals, commonly known as "gas pedals," that are used to actuate a motor vehicle's fuel system. A position-adjustable pedal is one whose resting position can be moved, or "adjusted," relative to a driver's seating position. Set forth below is an image of an "adjustable" pedal assembly that was installed in a 1975 Pontiac Grand Ville convertible (Willemsen Decl ¶ 7 & Ex. 1; Declaration of Daniel H. Kruger, sworn to July 6, 2003 [hereinafter, "Kruger Decl."] ¶ 21 & Ex. 1):



The pedal assembly depicted above includes a mounting bracket ("A") designed for attachment to a vehicle structure. The accelerator pedal ("B") is mounted on an

adjustment arm ("C").  A drive mechanism ("D") is operably connected to the adjustment arm ("C").  Actuation of the drive mechanism ("D") causes the adjustment arm ("C") to rotate about its pivot axis, thereby moving the pedal ("B") between a plurality of operable positions (Willemsen Decl. ¶¶ 7, 27-28 & Exs. 1, 3-4)).  Computer animations showing the actual movement of structures comprising a 1975 Pontiac Grand Ville adjustable accelerator pedal, and how those structures anticipate the asserted claims of the '239 and '695 Patents, appear in the files named "Pontiac" in the compact disk submitted as Exhibit 1 to this Brief (see Kruger Decl. ¶¶ 16 -24 & Ex. 1).[2]

The 1975 Pontiac Grand Ville, like most cars built prior to 2002, came with an engine whose throttle was actuated by a cable.  In vehicles equipped with cable-actuated throttle controls, depression of the accelerator pedal typically causes a cable to pull on a valve housed in a carburetor or fuel injection unit, thereby increasing the amount of fuel and air entering the engine and hence engine speed (Willemsen Decl. ¶ 8).  Accelerator pedals designed to actuate throttle cables also often actuate electronic sensors, exemplified by the electronic sensor ("E") incorporated in the 1975 Pontiac Grand Ville pedal for controlling an automatic transmission (id. ¶ 7 & Ex. 1).

Commencing in the mid-1990's, increasing numbers of vehicles sold in the United States came equipped with engines whose throttles were controlled electronically, by computerized systems commonly known as "electronic throttle controls" ("ETC's").  Electronic throttle controls can accommodate improved traction control and vehicle directional stability systems, simplified cruise controls, and on-board computer-

---

[2]  The mpeg files in Exhibit 1 are best viewed with Windows Media Player or a similar program.

3

controlled systems for improving fuel economy and reducing tailpipe emissions (Willemsen Decl. ¶ 9).  In vehicles whose engines are equipped with electronic throttle controls, accelerator pedals typically are coupled to a type of electronic sensor called a "potentiometer," which works something like a light dimmer (Willemsen Decl. ¶¶ 10 - 19 & Exs. 8-10).

In fact, an adjustable pedal assembly incorporating a potentiometer is disclosed in Figure 4 of published French Patent Application No. 2,739,947 to Urset ("Urset"), reprinted below (Dabney Decl. ¶ 7 & Ex. 6):



FIG.4

In the above design, the accelerator pedal (34) acts on an electronic potentiometer (98) that modulates an electronic signal as a function of the angular position of the pedal around its pivoting axis A4 (Dabney Decl. ¶¶ 7-8 & Exs. 6-7; Willemsen Decl. ¶ 29 & Ex. 5).  The electronic signal is communicated to a computer processor that, in turn, causes a fuel injection unit or other fuel system to vary the amount of fuel and air entering the engine (Willemsen Decl. ¶ 10). Computer animations showing the actual movement of structures disclosed in Urset, and how those structures anticipate the

4

asserted claims of the '239 and '695 Patents, appear in the files named "Urset" in Exhibit 1 to this Brief (Kruger Decl. ¶¶ 32-39 & Ex. 1).

<u>KSR Adjustable Pedals</u>

In mid-1998, KSR was chosen by Ford to supply adjustable pedal systems for the Ford Crown Victoria, Mercury Grand Marquis, and Lincoln Town Car lines commencing with the 2001 model year.   The Ford engines installed in these vehicles utilized cable-actuated throttle controls, and the KSR-supplied accelerator pedals accordingly included cable-attachment arms.  Neither Teleflex nor THC has ever alleged that any pedal systems supplied to Ford for the 2001, 2002, or 2003 model Crown Victoria, Grand Marquis, or Town Car programs incorporate or use any patented inventions allegedly owned by Teleflex or THC.  KSR was awarded U.S. Patent No. 6,151,986 for the design of the adjustable pedal systems supplied to Ford commencing with the 2001 model year (Willemsen Decl. ¶ 24).

In mid-2000, KSR was chosen by GM to supply adjustable pedal systems for the Chevrolet and GMC light pick-up truck lines commencing with the 2003 model year. The GM engines installed in these vehicles utilized electronic throttle controls, and the KSR-supplied accelerator pedals accordingly included off-the-shelf electronic pedal position sensors -- the identical sensors, in fact, as had been utilized in 1994 and later models of Chevrolet and GMC pick-up trucks equipped with optional diesel engines. KSR has patents pending on the design of the adjustable pedal system supplied to GM commencing with the 2003 model year (Willemsen Decl. ¶¶ 14-18, 25).

By letter dated March 28, 2001 -- long prior to when Teleflex could have legitimately or legally seen the design of any KSR adjustable pedals that were then being

developed for the 2003 model Chevrolet and GMC light pick-up truck lines -- Teleflex sent a letter to KSR which stated in part (Willemsen Decl ¶ 26 & Ex. 2):

> We understand that you have made several proposals to General Motors Corporation based on an adjustable pedal product in combination with an electronic throttle control. . . . Teleflex believes that any supplier of a product that combines an adjustable pedal with an electronic throttle control necessarily employs technology covered by one or more of the above Teleflex patents and applications.

That is to say, Teleflex took -- and apparently still takes -- the position that it had somehow patented the "combination" of "an adjustable pedal with an electronic throttle control," and so could accuse KSR of patent infringement without even seeing how any KSR-manufactured pedal assemblies were designed or operated.

Course of Proceedings

After attempting and failing to persuade KSR to enter into a "business arrangement" involving "some type of royalty arrangement coupled with the supply by us [Teleflex] to you [KSR] of electronic throttle controls or other components of an adjustable pedal system" (Willemsen Decl. ¶ 26 & Ex. 2), Teleflex on December 17, 2001, commenced an action in this Court entitled Teleflex Inc. v. KSR International Co., Case No. 01-74775 (the "First Teleflex Action"). The Complaint in the First Teleflex Action alleged that Teleflex was "the current assignee of all right, title and interest in the '565 Patent, including the right to bring and maintain this action with respect to the '565 Patent."[3] The Complaint in the First Teleflex Action included no allegations relating to the '239 Patent or the '695 Patent.

---

[3] Teleflex's Amended Complaint for Patent Infringement filed in the First Teleflex Action dated February 13, 2002, at ¶ 8.

6

On November 13, 2002, Teleflex voluntarily dismissed, without prejudice, its

Complaint in the First Teleflex Action. Five days later, on November 18, 2002, Teleflex

filed a new complaint commencing the present action, Case No. 02-74586 (the "Second

Teleflex Action"). Teleflex's Complaint in this Second Teleflex Action alleged in part:

> 8. Teleflex is the current assignee as to all right, title and interest in the
> '565 Patent, including the right to bring and maintain this action with
> respect to the '565 Patent.
>
> 16. Teleflex is the current assignee as to all right, title and interest in the
> '239 Patent, including the right to bring and maintain this action with
> respect to the '239 Patent.
>
> 24. Teleflex is the current assignee as to all right, title and interest in the
> '695 Patent, including the right to bring and maintain this action with
> respect to the '695 Patent.

In fact, as KSR subsequently discovered, Teleflex as of November 18, 2002, was

not the "assignee" or owner of any of the patents being asserted. Subsequent to the

commencement of the First Teleflex Action, and prior to the commencement of the

Second Teleflex Action, Teleflex on September 27, 2002, formally assigned to non-party

THC "all of its [Teleflex's] right, title and interest in and to the Inventions" covered by

any "patent used exclusively or primarily in the conduct of Assignor's [Teleflex's]

automotive, marine, aerospace/defense divisions businesses" (Dabney Decl. ¶ 2 & Ex.

1), including specifically "all claims by reason of infringement of the Patents and the

right to sue and collect damages for such infringement" (id.). As KSR has previously

demonstrated,[4] Teleflex's assignment of patents and patent claims to THC on September

27, 2002, destroyed any basis Teleflex might have had for claiming to be a "patentee" for

---

[4] See Reply Brief in Support of Motion to Dismiss for Lack of Subject Matter
Jurisdiction filed May 6, 2003.

7

purposes of 35 U.S.C. § 281, thus "necessitating dismissal under Federal Rule of Civil Procedure 12(b)(1)." Lans v. Gateway 2000, Inc., 84 F. Supp. 2d 112, 114 n.6 (D.D.C. 1999), aff'd sub nom. Lans v. Digital Equip. Corp., 252 F.3d 1320, 1321 (Fed. Cir. 2001) ("if a party lacks title to a patent, that party 'has no standing to bring an infringement action' under that patent") (citation omitted).

Promptly upon learning of Teleflex's non-ownership of the patents being asserted in this action, KSR commenced the Delaware Action against the patents' actual owner, non-party THC, and moved for an Order dismissing the present action for lack of subject matter jurisdiction.[5] On April 2, 2003, non-party THC served an answer in the Delaware Action that accused KSR of infringing the same three patents (the "THC Patents") that Teleflex had attempted to assert in this Michigan action (Dabney Decl. ¶ 4 & Ex. 3). On April 16, 2003, KSR moved in the Delaware Action for summary judgment declaring the THC Patents invalid under 35 U.S.C. § 103 (id. ¶ 5 & Ex. 4). KSR's summary judgment motion in the Delaware Action remains pending and undecided.[6]

In the event that this Court determines to adjudicate the merits of the THC-owned patents and THC-owned claims for infringement that Teleflex has alleged in this action, KSR hereby moves for summary judgment declaring invalid each of the THC Patents under 35 U.S.C. §§ 102 and 103.

---

[5]  See Brief in Support of Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction filed April 2, 2003; Teleflex's Response to KSR's Motion to Dismiss for Lack of Subject Matter Jurisdiction filed April 22, 2003; Reply Brief in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction filed May 6, 2003.

[6]  On April 28, 2003, the Court hearing the Delaware Action stayed proceedings in that action pending determination of KSR's pending motion to dismiss the within action for lack of subject matter jurisdiction.

## SUMMARY OF THE ARGUMENT

The claimed "inventions" of the THC Patents are invalid under 35 U.S.C. §§ 102 and 103, because prior art to the THC Patents expressly teaches both (a) the exact adjustable pedal configurations claimed in the THC Patents, and (b) the desirability of electronic pedal position sensors being deployed, mounted, and coupled to a vehicle's fuel system in the exact manner claimed in the THC Patents.

When it issued the THC Patents, the United States Patent and Trademark Office (the "Patent Office") did not have before it various references -- including the 1975 Pontiac, Urset, U.S. Patent No. 5,010,782 to Asano ("Asano"), or U.S. Patent No. 2,860,720 to Huff ("Huff") -- that disclosed each and every mechanical structure recited in the claims of the THC Patents (Willemsen Decl. ¶¶ 27-41 & Exs. 1, 3-14; Kruger Decl. ¶¶ 2-39 & Ex. 1). Without the impediment of this art, Teleflex's and THC's patent counsel procured issuance of the THC Patents by arguing to the Patent Office -- incorrectly -- that the prior art supposedly did not disclose the mechanical configurations that the 1975 Pontiac, Urset, Asano, Huff, and other prior art indisputably do, in fact, disclose (Dabney Decl. ¶ 14 & Ex. 13 at 13, ¶ 15 & Ex. 14 at 21; ¶ 16 & Ex. 15 at 10; ¶ 17 & Ex. 16 at 11).[7]

The prior art submitted with this motion establishes, not just clearly and convincingly, but beyond any doubt whatsoever, that at relevant times the claimed "inventions" of the THC Patents were unpatentable under 35 U.S.C. §§ 102 and 103. Summary judgment is therefore warranted and appropriate. Cf. Ryko Mfg. Co. v. Nu-

---

[7] For purposes of the present motion, the Court may assume that THC's assignor's misdescriptions of the prior art during prosecution of the THC Patents were innocent.

<u>Star, Inc.</u>, 950 F.2d 714 (Fed. Cir. 1990) (affirming summary judgment of invalidity under 35 U.S.C. § 103, where claimed "invention" consisted of mere substitution of electronic for mechanical activation device in automatic car wash).

<u>**ARGUMENT**</u>

United States patents contain "a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States . . . . " 35 U.S.C. § 154(a)(1). The scope of a patent "grant" is measured by the separately numbered "claims" appearing at the end of a patent. <u>See</u> <u>Graver Tank & Mfg. Co.</u> v. <u>Linde Air Prods. Co.</u>, 336 U.S. 271, 277 (1949) ("We have frequently held that it is the claim which measures the grant to the patentee."). "While the cases more often have dealt with efforts to resort to specifications to expand claims, it is clear that the latter fail equally to perform their function as a measure of the grant when they overclaim the invention." <u>Id</u>.

The validity of a patent grant thus turns on whether its corresponding "claim" recites subject matter that is patentably distinct from the "prior art" that existed at relevant times. Overly broad patent claims cannot be "saved" from invalidity through judicial importation of limitations appearing only in the "specification" portion of a patent. <u>E.I. Du Pont de Nemours & Co.</u> v. <u>Phillips Petroleum Co.</u>, 849 F.2d 1430, 1433-34 (Fed. Cir.), <u>cert</u>. <u>denied</u>, 498 U.S. 986 (1988).

As used in the Patent Act, the term "prior art" refers to subject matter falling within the scope of 35 U.S.C. § 102. For purposes of the present motion, KSR relies on "prior art" meeting the standards of 35 U.S.C. §§ 102 (a) and (b) which provide:

A person shall be entitled to a patent unless--

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States,
. . . .

According to interrogatory answers served by Teleflex, the alleged "inventions" of the '239 and '695 Patents were made on May 23, 1997 (Dabney Decl. ¶ 6 & Ex. 5, response to Interrogatory No. 11). Thus, under 35 U.S.C. § 102(a), the "prior art" of the '239 and '695 Patents includes any pertinent patents or printed publications issued prior to May 23, 1997, "in this or a foreign country," such as French Patent Appln. No. 2,739,947 to Urset published April 18, 1997 (Dabney Decl. ¶ 7 & Ex. 6).

The '239 and '695 Patents issued from "continuation" applications that claimed priority to a "parent" application filed November 24, 1997 (Dabney Decl. ¶¶ 14-15 & Exs. 13-14). Thus, under 35 U.S.C. § 102(b), the "prior art" of the '239 and '695 Patents also includes any pertinent products that were in public use or on sale in the United States on or prior to November 24, 1996, such as the adjustable pedals that were offered as an option in the 1975 Pontiac Grand Ville (Willemsen Decl. ¶ 7 & Ex. 1) and the electronic throttle control ("ETC") pedals that came standard in 1994 Chevrolet C/K pick-up trucks equipped with diesel engines (id. ¶¶ 14-19 & Exs. 8-10).

According to interrogatory answers served by Teleflex, the alleged "inventions" of the '565 Patent were made on February 14, 1998 (Dabney Decl. ¶ 6 & Ex. 5, response to Interrogatory No. 11). Thus, under 35 U.S.C. § 102(a), the "prior art" of the '565 Patent includes any pertinent patents or printed publications issued prior to February 14, 1998, such as U.S. Patent No. 5,010,782 to Asano. The '565 Patent issued from a

11

"continuation" application that claimed priority to a "parent" application filed January 26, 1999 (Dabney Decl. ¶ 17 & Ex. 16). Thus, under 35 U.S.C. § 102(b), the "prior art" of the '565 Patent also includes any pertinent products that were in public use or on sale in the United States on or prior to January 26, 1998.

## I. THE '239 PATENT IS INVALID UNDER 35 U.S.C. § 102.

"It is well-settled that a claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference." <u>Celeritas Technologies, Ltd.</u> v. <u>Rockwell Int'l Corp.</u>, 150 F.3d 1354, 1361 (Fed. Cir. 1998). As set forth below, Claim 1 of the '239 Patent is fully anticipated by both Urset and the 1975 Pontiac Grand Ville adjustable accelerator pedal.

The '239 Patent (see Exhibit 2 hereto) discloses a single embodiment of an "adjustable pedal assembly" comprising the structures depicted below:



_FIG-1_

In the above design, an adjustable pedal assembly is disclosed comprising a "mounting arrangement" (2, 3, 23, 24, 25, 26) designed for attachment to a vehicle structure. A pedal (6, 7, or 8) is pivotally supported for rotation about a first pivot axis (9) with respect to the "mounting arrangement." An "adjustment element" (5) is pivotally supported for rotation about a second pivot axis (4) that is parallel to the first. A drive mechanism (11) is operably connected to the "adjustment element" (5) and causes it to rotate about its pivot axis, thereby causing the pedals to move between a plurality of operable positions. With regard to the accelerator pedal (6), the specification recites that it is "preferably connected to an electric control potentiometer," but that "a mechanical connection such as a wire or cable, can be used as an alternative to the electrical transfer" ('239 Patent at col. 5, lines 1, 41-43).[8]

Although the '239 Patent discloses various structures (e.g., the particular configuration of the disclosed, rearward facing "mounting arrangement") that THC's assignor(s) might have pointed out in claim 1 of the '239 Patent in order to distinguish the subject matter of that claim from the prior art,[9] they did not do so. Rather, in an apparent attempt to exclude KSR from selling KSR-designed (and separately patented) pedal

---

[8]   The drawings submitted with the original Swedish "parent" application of the '239 Patent, filed by non-party Claes Johansson Automotive AB, notably did not include the Figure "36" or the associated text referring to "electronic control potentiometer 36" appearing in column 6, lines 1-9 of the '239 Patent (Dabney Decl. ¶ 11 & Ex. 10 at KSR007626). These matters appear to have been hand-written in by Teleflex's and THC's U.S. patent counsel.

[9]  The '239 Patent was prosecuted as a "continuation" application filed September 5, 2000, based on the disclosure of a "parent" application that was filed nearly two (2) years previously and issued as U.S. Patent No. 6,151,984 (the "'984 Patent"; see Exhibit 3 hereto). The '984 Patent, whose claims are considerably narrower than those of the '239 and '695 Patents, has never been asserted against KSR.

assemblies that are totally different, in design and mode of operation, from any "invention" even arguably disclosed in the '239 Patent, THC's and Teleflex's patent counsel wrote Claim 1 of the '239 so broadly and so generically that it is fully anticipated by prior art to the '239 Patent. [10]

The '239 Patent is invalid under 35 U.S.C. § 102(a), because its sole claim is fully anticipated by Urset (see Willemsen Decl. ¶ 30 & Ex. 6; Kruger Decl. ¶ 32 & Ex. 1). A computer animation, comparing the words of Claim 1 of the '239 Patent with 3-dimensional images of the Urset disclosure, appears in the file named "Urset_239_claim_1.mpeg" in the disk submitted as Exhibit 1 to this Brief. A conventional claim chart comparing the language of Claim 1 of the '239 Patent with the Urset disclosure appears in Exhibit 6 to the accompanying Declaration of Larry Willemsen.

---

[10]  It should be noted that, for purposes of determining whether a person is using a "patented invention" for purposes of 35 U.S.C. § 271(a), "the court must consider the substance of the invention along with the form of the claims," and must determine whether an accused product is or "is not the equivalent of the invention disclosed in [a] . . . patent". Mead Digital Sys., Inc. v. A.B. Dick Co., 723 F.2d 455, 463 & n.12 (6th Cir. 1983) (emphasis added). See, e.g., Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 41-42 (1929) (quoting Burr v. Duryee, 68 U.S. (1 Wall.) 531, 573 (1864)); Autogiro Co. of Am. v. United States, 384 F.2d 391, 399-400 (Ct. Cl. 1967); Nickerson v. Bearfoot Sole Co., 311 F.2d 858, 879-81 (6th Cir. 1962), cert. denied, 375 U.S. 815 (1963). No comparable "equivalents" analysis is pertinent to questions of anticipation under 35 U.S.C. § 102. Lewmar Marine, Inc. v. Barient, Inc., 827 F.2d 744, 747-48 (Fed. Cir. 1987), cert. denied, 484 U.S. 1007 (1988).

Figures 3 and 4 of Urset are reprinted below (Dabney Decl. ¶¶ 7-8 & Exs. 6-7):



FIG.3     FIG.4

In the above design, an adjustable pedal assembly is disclosed comprising a
mounting arrangement (40, 44, 46, 52) designed for attachment to a vehicle structure. A
pedal (34) is pivotally supported for rotation about a first pivot axis (A4) with respect to
the mounting arrangement. An "adjustment element" (90) is pivotally supported on a
shaft (64) for rotation about a second pivot axis (A2) that is parallel to the first. A drive
mechanism (56) is operably connected to the "adjustment element" (90) and causes it
both to slide and to rotate about its pivot axis (A2), thereby moving the pedal (34)
between a plurality of operable positions. Mounted adjacent to the accelerator pedal (34)
is an "accelerator potentiometer" (98) whose electronic output varies "as a function of
the angular position of the pedal 34 about its pivoting axis". The output of the disclosed
"accelerator potentiometer" is independent of the pedal's adjustment movement between
operable positions (Kruger Decl. ¶ 33; Willemsen Decl. ¶ 30 & Ex. 6; see Exhibit 1
hereto).

Under 35 U.S.C. § 282, "[t]he burden of establishing invalidity of the patent or
any claim thereof shall rest with the party asserting such invalidity. " Further, "the facts

15

to support a conclusion of invalidity of an issued patent must be proved by clear and convincing evidence." Ryko, 950 F.2d at 716. These principles flow from the presumed expertise of the Patent Office in discharging its statutory functions, and the deference ordinarily due a Government agency when it considers a matter falling within its jurisdiction. See American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed. Cir.), cert. denied, 469 U.S. 821 (1984).

But where, as here, an invalidity defense relies on prior art that was never considered by the Patent Office in issuing a challenged patent, there is no reason for a Court to defer to any non-existent judgment of the Patent Office with respect to the uncited art:

> When an attacker, in sustaining the burden imposed by § 282, produces prior art or other evidence that was not considered in the PTO, there is . . . no reason to defer to the PTO so far as its effect on validity is concerned. Indeed, new prior art not before the PTO may so clearly invalidate a patent that the burden is fully sustained merely by proving its existence and applying the proper law . . . . When new evidence touching validity of the patent not considered by the PTO as relied on, the tribunal considering it is not faced with having to disagree with the PTO or with deferring to its judgment or with taking its expertise into account.

American Hoist, 725 F.2d at 1359-60 (emphasis in original).

"A patent, in the last analysis, simply represents a legal conclusion reached by the Patent Office," typically reached "in an ex parte proceeding, without the aid of the arguments which could be advanced by parties interested in proving patent invalidity." Lear v. Adkins, 395 U.S. 653, 670 (1969). The present case is a paradigm of one in which "new prior art not before the PTO . . . so clearly invalidate[s] a patent that the burden is fully sustained merely by proving its existence and applying the proper law. " American Hoist, 725 F.2d at 1359-60.

16

Here as set forth above, in Willemsen Exhibit 6, and in the compact disk annexed as Exhibit 1 hereto, a single reference -- Urset -- clearly discloses each and every structure recited in Claim 1 of the '239 Patent. That claim is accordingly invalid under 35 U.S.C. § 102(a). Celeritas, 150 F.3d at 1361.

Claim 1 of the '239 Patent is also fully anticipated by the adjustable pedal assembly that was installed as optional equipment in the 1975 Pontiac Grand Ville (Willemsen Decl ¶ 27 & Ex. 3; Kruger Decl. ¶ 18 & Ex. 1; see Exhibit 1 hereto). A computer animation, comparing the words of Claim 1 of the '239 Patent with 3-dimensional images of the 1975 Grand Ville accelerator pedal assembly disclosure, appears in the file named "Pontiac_239_claim_1.mpeg" in Exhibit 1 to this Brief. A conventional claim chart comparing the language of Claim 1 of the '239 Patent with photographs of the 1975 Grand Ville accelerator pedal assembly appears in Exhibit 3 to the accompanying Declaration of Larry Willemsen.

## II.    THE '695 PATENT IS INVALID UNDER 35 U.S.C. § 102

The disclosure of the '695 Patent (see Exhibit 4 hereto) is identical to that of the '239 Patent. The only difference between the '695 Patent and the '239 Patent is that the two claims of the '695 Patent include some additional descriptions of the alleged "inventions" that are not present in Claim 1 of the '239 Patent.

The '695 Patent is invalid under 35 U.S.C. § 102(a), because both of its claims are fully anticipated by Urset and the 1975 Pontiac Grand Ville accelerator pedal assembly (see Willemsen Decl. ¶ 28 & Ex. 4; Kruger Decl. ¶¶ 19-24 & Ex. 1). Computer animations, comparing the words of Claims 1 and 2 of the '695 Patent with 3-dimensional images of the Urset disclosure and the 1975 Pontiac Grand Ville accelerator pedal assembly, appear in the files whose names include "Urset" and "Pontiac" in the

accompanying compact disk (see Exhibit 1 hereto).  Conventional claim charts, comparing the language of Claims 1 and 2 of the '695 Patent with the Urset disclosure and the 1975 Pontiac Grand Ville accelerator pedal assembly, appear in Exhibits 4 and 7 to the accompanying Declaration of Larry Willemsen.

For the same reasons that Claim 1 of the '239 Patent is invalid under 35 U.S.C. § 102(a), Claims 1 and 2 of the '695 Patent are also and equally invalid under that statute. Each and every structure recited in Claims 1 and 2 of the '695 Patent is disclosed in Urset (see Exhibit 1 hereto; Willemsen Decl ¶ 31 & Ex. 7).  Each and every structure recited in Claims 1 and 2 of the '695 Patent is also disclosed in the 1975 Pontiac Grand Ville pedal assembly (id. ¶ 28 & Ex. 4).  These references are, without more, fatal to the validity of the '695 Patent.

When it issued the '695 Patent to THC's assignor, the Patent Office explained its action as follows (Dabney Decl. ¶ 15 & Ex. 14 at 26):

> The following is an examiner's statement of reasons for allowance:  The prior art taken as a whole, neither teaches nor renders obvious an adjustable pedal assembly comprising a mounting arrangement, at least one pedal, an adjustment element, a first pivot axis connecting the pedal to the adjustment element, and a second pivot axis connecting the adjustment element to the mounting arrangement, said axises being parallel, and wherein the pedal is pivotal about the first axis which is movable with the adjustable element about the second axis (connected at the mounting arrangement).

When it made the above-quoted statement, the Patent Office did not have the benefit of Urset, the 1975 Pontiac Grand Ville Pedal, or U.S. Patent No. 2,860,720 to Huff ("Huff"; see Exhibit 13 hereto; Willemsen Decl. ¶ 40 & Ex. 14), each of which references disclosed the very combination of structure whose purported non-existence was the expressly stated basis for the Patent Office's issuance of the '695 Patent to

18

Teleflex.[11]  The record of this case shows, clearly and convincingly, that both claims of

the '695 Patent are fully anticipated by prior art, and are therefore invalid under 35 U.S.C.

§ 102.

### III.    CLAIM 4 OF THE '565 PATENT IS INVALID UNDER 35 U.S.C. § 103.

35 U.S.C. § 103(a) provides:

> A patent may not be obtained though the invention is not identically
> disclosed or described as set forth in section 102 of this title, if the
> differences between the subject matter sought to be patented and the prior
> art are such that the subject matter as a whole would have been obvious at
> the time the invention was made to a person having ordinary skill in the art
> to which said subject matter pertains.

"Obviousness is a question of law based upon underlying factual determinations."

Sandt Technology, Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1354 (Fed. Cir.

2001) (quoting Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.,

21 F.3d 1068, 1071 (Fed. Cir. 1994)).  "Therefore, a district court can properly grant, as a

matter of law, a motion for summary judgment on patent invalidity when the factual

inquiries into obviousness present no genuine issue of material facts."  Ryko Mfg Co. v.

Nu-Star, Inc., 950 F.2d 714, 716 (Fed. Cir. 1990).

In Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966), the Supreme Court set

forth the analytical framework for determining questions of patent invalidity under 35

U.S.C. § 103:

---

[11] The Huff reference (see Exhibit 13 hereto) discloses all of the structure recited in the
'239 Patent and '695 Patent claims except for the recited "electric generator", an off-the-
shelf part used in vehicles whose engines utilize electronic, rather than cable-actuated,
throttle controls.  The Patent Office statement quoted in the text demonstrates clearly that
there was and is no patentable novelty in attaching an off-the-shelf pedal position sensor
to an otherwise old adjustable pedal configuration.  The Huff reference is discussed more
fully in Part IV, infra.

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

As set forth below, Claim 4 of the '565 Patent is written so broadly as to leave no patentable "differences" between the claimed subject matter and the prior art of those patents. The absence of patentable "differences between the prior art and the claims at issue," 383 U.S. at 17, is demonstrated in the file named "Asano_565_claim_4.mpeg" of Exhibit 1 to the accompanying Declaration of Daniel H. Kruger and attached to this Brief as Exhibit 1. A conventional claim chart demonstrating the invalidity of the '565 Patent are submitted as Exhibit 12 to the accompanying Declaration of Larry Willemsen.

The '565 Patent (see Exhibit 5 hereto) discloses a "vehicle control pedal apparatus 12", the two preferred embodiments of which appear in the figures below:



FIG-4

In the above design, an "adjustable pedal assembly 22" is pivotally mounted on a support (18, 44). A screw drive mechanism housed in a guide member (62) causes the pedal (14) to slide back and forth along the guide member. The position of the pivot (24) remains constant while the pedal arm (14) slides back and forth along a tubular guide

20

member (62).  In one embodiment, the assembly includes a "cable attachment member 78" for actuating an engine throttle cable.  In a second embodiment, in lieu of or in addition to the "cable attachment member 78", the disclosed pedal assembly can optionally include an electronic pedal position sensor (42), characterized in the '565 Patent as an "electronic throttle control 28" (see Exhibit 5 hereto at col. 3, line 29).  The disclosed "electronic throttle control" is a modular unit (42) attached to a portion of the pedal's support (18, 44) and engaged with the pivot member (34) of the pedal arm (14).

### A.    Scope and Content of Prior Art.

"The relevant art is defined by the nature of the problem confronting the would-be inventor."  Ryko, 950 F.2d at 716.  Here, the "problem" ostensibly confronting the '565 inventor was to provide an adjustable pedal assembly that could be installed in a vehicle whose engine utilized an electronic, rather than a cable-actuated, throttle control system.  Thus, as the references cited on the face of the '565 Patent make clear, the "relevant art" to that patent includes (a) adjustable vehicle pedal assemblies and (b) electronic pedal position sensors.

The prior art to the '565 Patent includes U.S. Patent No. 5,010,782 filed July 28, 1989 ("Asano"; see Exhibit 6 hereto).  Figure 5 of Asano is reproduced at right, below; a computer animation of Asano appears at left, below (see Kruger Decl. ¶ 5):

21




In the above design, an adjustable pedal assembly is pivotally mounted on a support (50).  The assembly includes a cable attachment structure (58) for actuating an engine throttle cable (61).  A screw drive (100) housed in a guide member (52) causes the pedal (74) to slide back and forth along the guide member.  The position of the support pivot (54) remains constant while the pedal arm (74) slides back and forth along a guide member (52).  The operation of Asano is depicted in the computer animation file named "Asano_565_claim_4.mpeg" on the disk submitted as part of Exhibit 1 to the accompanying Declaration of Daniel H. Kruger.  Asano was not cited to the Patent Office during prosecution of the '565 Patent or its parent, even though Teleflex's and THC's patent counsel had cited Asano to the Patent Office during prosecution of the "parent" of the'239 Patent (see Exhibit 3 hereto).[12]

---

[12]   The design disclosed in the '565 Patent is virtually identical to that disclosed in U.S. Patent No. 5,722,302 filed October 2, 1996, and originally assigned to Comfort Pedals, Inc. (see Exhibit 1 at Rixon_Engelgau_565_4_compare.mpeg; Kruger Decl. ¶ 29 & Ex. 1; Willemsen Decl. ¶ 32 & Ex. 11; Dabney Decl. ¶ 9 & Ex. 8.  KSR believes that pedal assemblies embodying the design disclosed in the '302 Patent were on sale or in public use long prior to January 26, 1998; however, THC and Teleflex have thus far interposed

The prior art to the '565 Patent further includes specific teachings with respect to the desirability of electronic, as distinguished from mechanical, throttle controls in automotive vehicles, from the point of view of engine management and pedal operability:

> Control of throttle in passenger cars and trucks is usually dependent upon the position of an accelerator pedal, which represents vehicle operator demand. The accelerator pedal position, or demand, is then linked to the engine throttle. Accelerator pedal movement was transmitted for many years through mechanical linkages consisting of solid rods and ball joints. In some applications, the solid rod linkage was replaced by a cable within a sleeve, referred to in the trade as a Bowden cable. These mechanical linkages are prone to problems which tend to affect all mechanical systems, such as sticking, freezing, breakage, and other mishaps. In addition, adaptation of the mechanical linkages to allow for special features such as more efficient energy utilization, reduced emissions, idle speed control, and "limp-home" modes of operation are generally not practical, or even possible in some cases.
>
> By using a sensor to sense accelerator demand, a servo-motor to control the throttle position, and a computer system to control operation of the throttle relative to the input from the accelerator pedal sensor and other various sensed inputs, a variety of special features may be incorporated in the accelerator-throttle linkage. In these computer-assisted systems, the throttle linkage is commonly referred to as a "drive-by-wire" system, since the linkage is electrical.

U.S. Patent No. 5,998,892 filed as of September 4, 1996; see Exhibit 7 at col. 1, lines 40-64.

---

groundless objections to making discovery on this point. KSR has deferred challenging these objections in view of the pending motion to dismiss for lack of subject matter jurisdiction and KSR's co-pending motion filed April 25, 2003, for a stay of discovery-related proceedings pending determination of the subject matter jurisdiction issue.

The prior art status of the Ford Expedition pedal disclosed in Rixon '302 is a matter that KSR would pursue in discovery if this action were dismissed and proceedings in the Delaware Action resumed, or if the discovery period in this action were extended. In order to avoid a factual dispute concerning cumulative evidence of invalidity, KSR does not, in this motion, rely on Rixon '302, except to note that (a) Asano was cited during prosecution of Rixon '302, and thus not surprisingly, (b) the claims of Rixon '302 are much narrower than the claims of the '565 Patent.

The prior art to the '565 Patent further includes express teaching with regard to the desirability of electronic, as distinguished from mechanical, linkages between vehicle accelerator pedals and engine throttles:

> In the automotive art, accelerator type foot pedals are employed for controlling the flow of fluids to the engines. These usually include a pedal mounting affixed to the vehicle body and a series of links and levers, or Bowden wires, connecting the pedal to the carburetor, fuel injector, controller or the link. These link connections usually must be designed to withstand and accommodate engine movements relative to the vehicle frame, as well as to provide accurate control despite such movements. In addition, space must be provided for the linkages to function properly. The choices for routing of the mechanical control rods or wires are limited by their nature. With electrical sensing means directly associated with the pedal, the connection to a carburetor or the like can be accomplished with electrical wiring which relatively speaking, can free the connection problems from the special physical relationships of the older mechanical systems.

U.S. Patent No. 5,408,899 filed June 13, 1993, at col. 1 lines14-32; see Exhibit 8.

The prior art to the '565 Patent further includes express teachings with respect to the desirability of locating an electronic pedal position sensor adjacent to a vehicle's accelerator pedal, inside the vehicle's passenger compartment, rather than in a vehicle's engine compartment:

> An early design of an electronic control system located the movement detecting sensor in the engine compartment near the fuel pump; however, this arrangement proved undesirable due to the complex mechanical linkage required to connect the foot pedal to the sensor. Moreover, the harsh operating environment of the engine compartment exposed the sensor to heat, oil and dirt, which can contribute to premature failure of sensitive components. Subsequent designs thus located the sensor in the cab or operator compartment, the sensor being incorporated in a foot pedal arrangement that included a means for providing rotative motion of a potentiometer in response to depression of the foot pedal.

U.S. Patent No. 5,241,936 filed September 9, 1991; see Exhibit 9, at col. 1 lines 52-65.

The prior art to the '565 Patent further includes a number of modular, self-contained pedal position sensors that (a) were specifically designed to be mounted on the pivot of an accelerator pedal, and (b) were specifically intended and marketed for use to actuate electronic throttle controls in vehicles. One example of a modular prior art pedal position sensor is disclosed in U.S. Patent No. 5,385,068 filed December 18, 1992 (the "'068 Patent"; see Exhibit 10; Willemsen Decl. ¶ 12). Figure 1 of the '068 Patent, depicting a "position sensor 17", is reproduced below:



FIGURE 1

A second example of a modular prior art pedal position sensor is the "503 Series" pedal position sensor manufactured by CTS Corporation of Elkhart, Indiana ("CTS") and offered for sale in the United States continuously since at least 1993 (Willemsen Decl. ¶¶ 14-19 & Exs. 8-10). A physical sample of a CTS 503 Series pedal position sensor is being submitted with this Brief (id. ¶ 18). The modular design of the CTS 503 Series sensor enabled it to be installed on different makes and models of vehicle accelerator pedal assemblies at relevant times (id. ¶ 19). At relevant times CTS provided specifications identifying minimum requirements (e.g., minimum surface requirements for attachment points) that any person of ordinary skill in the pedal design art could

25

follow and use to design a pedal assembly that could accommodate a CTS 503 Series sensor (id. ¶ 21)

The prior art to the '565 Patent further includes the accelerator pedal assembly installed in certain 1994 Chevrolet C/K pick-up trucks depicted in Exhibit 11 to this Brief (the "1994 GM ETC Pedal"). The 1994 GM ETC Pedal included a CTS 503 Series position sensor mounted on the pedal's support bracket, adjacent to the pedal and engaged with the pivot shaft about which the pedal rotated in operation (Willemsen Decl. ¶ 16). Depression of the 1994 GM ETC Pedal caused a pivot shaft to rotate inside the position sensor engaged with the pedal's pivot shaft, producing electronic signal outputs that vary with the pedal's operating position (id.). At all relevant times, CTS 503 Series pedal position sensors were specifically designed to be engaged with the rotating pivot shaft of an accelerator pedal assembly, and were preferably mounted adjacent to an accelerator's pivot shaft as exemplified by the 1994 GM ETC Pedal shown in Exhibit 6 to this brief (id. ¶¶ 19, 21).

The prior art to the '565 Patent further includes at least two adjustable pedal assemblies incorporating an electronic pedal position sensor, namely, Urset (described above) and  U.S. Patent No. 5,819,593 filed August 17, 1995 ("Rixon '593"; see Exhibit 12).  Figure 2 of Rixon '593 is reproduced below:



FIG-2

FIG-3

In the above design, an accelerator pedal (46) is pivotally mounted on the housing (24) of a sliding carrier assembly (12). A pedal position sensor, identified as "potentiometer 60", is engaged with the disclosed pedal's pivot shaft and emits varying electric signal outputs corresponding to the pedal's arm position as it pivots about the axis of the pivot shaft (50) between resting and applied positions. The pedal position sensor disclosed in Rixon is mounted in exactly the same way -- engaged with the accelerator pedal's pivot shaft -- as every other electronic pedal position sensor in the prior art of record, and also functions in exactly the same way as every other electronic pedal position sensor in the prior art of record.

**B.     Differences Between the Prior Art and**
**        Claim 4 of the '565 Patent**

As is set forth in the computer animation file named "Asano_565_claim_4.mpeg" (see Exhibit 1 hereto; Kruger Decl. ¶¶ 5-6), and as is also set forth in the claim chart submitted as Exhibit 12 to the accompanying Declaration of Larry Willemsen, Asano discloses each and every structure recited in claim 4 of the '565 Patent, with the exception of the optional "an electronic control (28) attached to said support" and

"responsive to said pivot (24) for providing a signal (32) that corresponds to pedal arm position as said pedal arm pivots about said axis (26) between rest and applied positions." According to the '565 Patent, the recited "electronic control" can be "any of various electronic throttle control mechanisms known in the art, as the one described in" Rixon '593 (see Exhibit 12 hereto, at col. 3, lines 22-25).

### C.    The Level of Ordinary Skill in the Art at Relevant Times.

At relevant times, a person of average or "ordinary" skill in the art of the THC Patents would have had a minimum of two (2) years of college level training in mechanical engineering and two-three years' work experience spanning at least one complete pedal design "cycle" (Willemsen Decl. ¶ 20).[13]  As set forth below, however, one need not have had any training in the mechanical arts in order to see that the subject matter of claim 4 of the '565 Patent was neither novel nor patentable as of January 26, 1998.

### D.    Claim 4 of the '565 Patent Recites a Trivial and Obvious Variant of Asano.

With regard to the '565 Patent, the legal question raised by this motion is whether, to a person of ordinary skill in the pedal design art as of January 26, 1998, it would have been obvious to combine (a) the adjustable pedal assembly of Asano, with (b) an off-the-shelf electronic pedal position sensor, such as the CTS 503 Series pedal position sensor. Under well-settled law, "when determining the patentability of a claimed invention which

---

[13]  Teleflex contends that a person of "ordinary" skill in the art of the THC Patents would have had "an undergraduate degree in mechanical engineering (or an equivalent amount of industry experience) who has familiarity with pedal control systems for vehicles" (Dabney Decl. ¶ 6 & Ex. 5, answer to Interrogatory No. 6).  For purposes of this motion, the Court may assume, for purposes of argument, the skill level contended for by Teleflex, to the extent it differs from KSR's description.

combines two known elements, 'the question is whether there is something in the prior art as a whole to suggest the desirability, and thus the obviousness, of making the combination.'" Ecolochem, Inc. v. Southern Cal. Edison Co., 227 F.3d 1361, 1372 (Fed. Cir. 2000) (quoting In re Beattie, 974 F.2d 1309, 1311-12 (Fed. Cir. 1992) (quoting Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co., 730 F.2d 1452, 1462 (Fed. Cir. 1984))).

The record here abounds with evidence suggesting the "desirability" of adding an electronic pedal position sensor to Asano at relevant times:

-- As of January 26, 1998, a vehicle manufacturer's choice of fuel system dictated whether a vehicle's accelerator pedal needed to be coupled to an electronic pedal position sensor, or not (Willemsen Decl. ¶ 22). Vehicles equipped with electronic throttle controls require, by their very nature, the use of electronic sensors capable of sensing an accelerator pedal's position (id. ¶ 11). To be installable in a vehicle whose engines utilized an electronic throttle control, such as certain 1994 Chevrolet C/K pick-up trucks, the Asano pedal would have had to be coupled to an electronic pedal position sensor (id.). The fundamental requirements of electronic throttle control systems, without more, provided compelling suggestion and motivation to add an electronic pedal position sensor to Asano: without such an addition, the Asano pedal could not be installed in a vehicle with an electronic throttle control system,

-- As of January 26, 1998, prior art of record expressly taught that electronic pedal position sensors coupled to electronic throttle controls had various operational advantages over mechanical cable linkages coupled to mechanical throttle controls (see Exhibits 7-9 hereto; Willemsen Decl. ¶ 9). These advantages (e.g., reduced emissions, better mileage,

29

compatibility with "traction control" or similar features, avoidance of sticking or freezing of cables, etc.) all clearly pointed to the desirability of adding an electronic pedal position sensor to Asano: without such an addition, the owner of Asano could not offer the benefits of the Asano design to a vehicle manufacturer intending to utilize engine features dependent on electronic throttle control operation.

-- As of January 26, 1998, prior art of record expressly taught that the preferred location for an electronic pedal position sensor in a vehicle was adjacent to the pivot shaft of an accelerator pedal (Willemsen Decl. ¶ 13). As of January 26, 1998, attaching a position sensor to a vehicle's accelerator pedal pivot shaft was a standard technique used to enable accelerator pedals to communicate with and actuate electronic throttle controls (id.). A prior art CTS 503 Series sensor could have been added to the Asano pedal design without materially altering that pedal (id. ¶ 36).

-- As of January 26, 1998, prior art of record expressly taught that electronic pedal position sensors could be coupled to the accelerator pedal in an adjustable pedal assembly in exactly the same way as such sensors have been installed in non-adjustable pedal assemblies, namely, through engagement with the pivot shaft of the accelerator pedal (compare Exhibit 11 hereto (1994 GM ETC Pedal, with position sensor engaged with accelerator pedal pivot shaft) with Exhibit 12 hereto (Rixon adjustable pedal, with position sensor (60) engaged with accelerator pedal pivot shaft)).

The motivations for combining Asano with an electronic pedal position sensor, described above, are at least as clear and convincing as motivations that the Federal Circuit has found sufficient to invalidate patent claims under 35 U.S.C. § 103. For example, in Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714 (Fed. Cir. 1990), the patent-in-

suit claimed an automatic car wash activated by an electronic keypad entry system. Id. at 717. The plaintiff alleged that he was the first to think of using a keypad entry system to activate a car wash (as distinct from some other type of powered system). In affirming a grant of summary judgment of invalidity under 35 U.S.C. § 103, the Federal Circuit in Ryko held that known advantages of using electronic keypad systems to control powered systems in general (e.g., garage doors) provided ample motivation for using such a system to control a car wash. The present case is considerably more compelling than Ryko; for here, the record shows not only that pedal position sensors offer exactly the same functional advantages when coupled to adjustable and non-adjustable pedal systems, but that the choice of a vehicle engine's fuel management system, when electronic, actually dictates use of electronic pedal position sensors coupled to a vehicle's accelerator pedal as described above.

In Novo Nordisk A/S v. Becton Dickinson & Co., 304 F.3d 1216 (Fed. Cir. 2002), the patent-in-suit claimed a 30 gauge needle in a pen-style insulin injection system. Id. at 1218-19. The prior art disclosed 30-gauge needles and pen-style insulin injection systems, but the plaintiff alleged that it was the first to think of offering the two features in combination. Id. In affirming a judgment holding the patent invalid under 35 U.S.C. § 103, the Federal Circuit cited evidence that the thinner needles "reduced the pain associated with self-administered insulin injections," and that "the known pain reduction provided the requisite motivation to narrow the needle" in the accused devices. Id. at 1219. Here, the known desirability, if not necessity, of utilizing electronic pedal position sensors to cooperate with an electronic throttle control in a vehicle provided "motivation" at least a compelling as that found invalidating in Novo Nordisk.

In Richardson-Vicks Inc. v. Upjohn Co., 122 F.3d 1476 (Fed. Cir. 1997), the patent-in-suit claimed an over-the-counter ("OTC") medicine that combined the analgesic, ibuprofen, and the decongestant pseudo ephedrine. Id. at 1477. Although both medicaments were in the prior art, and the prior art also included tablets combining pseudo ephedrine with aspirin and with acetaminophen, the plaintiff claimed that it was the first to think of offering pseudo ephedrine in a tablet with ibuprofen. In upholding a judgment of invalidity under 35 U.S.C. § 103, the Federal Circuit found that there was "strong motivation to combine the two ingredients into a single unit dosage" in view of publications announcing FDA intent to permit OTC sales of ibuprofen, and OTC industry anticipation that 'ibuprofen would quickly begin displacing acetaminophen and aspirin as the preferred analgesic." Id. at 1484. So too here, as of January 26, 1998, an increasing number of vehicles sold in the United States were being equipped with electronic throttle control systems because such systems offer various operational advantages over cable-actuated throttle control systems (Willemsen Decl. ¶ 9). This increased demand for pedals compatible with electronically controlled throttle systems provided clear commercial motivation for combining Asano and a CTS 503 Series sensor that was identical, in principle, to the motivation identified in Richardson-Vicks as warranting a conclusion of obviousness.

During the prosecution of the '565 Patent, the Patent Office took the position that "the use of an electronic throttle control means (28) attached to a support member (40, 26) in a pedal assembly is old and well-known in the art" (Dabney Decl. ¶ 17 & Ex. 16 at

32

4).[14] THC's assignor did not, and could not, dispute this contention. Instead, counsel for THC and Teleflex argued that claim 4 of the '565 Patent was patentable because a mechanical limitation recited in the claim, namely, "wherein the position of said pivot (24) remains constant while said pedal arm (14) moves in fore and aft directions with respect to said pivot" (see Exhibit 5 hereto at col. 6, lines 34-36), purportedly did not exist in the prior art.[15] In fact, as illustrated in accompanying compact disk (Kruger Decl. Ex. 1; Willemsen Decl. ¶ 36), Asano discloses an adjustable pedal assembly whose support pivots remains in a constant position during pedal arm adjustment -- the very feature that defendant's assignor argued distinguished claim 4 of the '565 Patent from the prior art.

Under a long and unbroken line of Supreme Court decisions, "[a] patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men." Sakraida v. Ag Pro, Inc., 425 U.S. 273, 281 (1976) (quoting Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152 (1950)). The Supreme Court has thus repeatedly articulated and applied a special "test of validity of combination patents," Sakraida, 425 U.S. at 482, which test

---

[14] The Patent Office notably took the same position during prosecution of both the '239 Patent (Dabney Decl. ¶ 14 & Ex. 13 at 3-5) and the '695 Patent (id. ¶ 15 & Ex. 14 at 13).

[15] With reference to what became claim 4 of the '565 Patent, defendant's assignor argued: "Independent claim 24 is a duplicate of claim 15 in the parent application except the word 'throttle' has been eliminated. . . . Accordingly, claim 24 is allowable for the same reasons claim 15 was allowed in U.S. Patent No. 6,129,241" (Dabney Decl. ¶ 17 & Ex. 16, at p. 11). THC's assignor argued that "claim 15 in the parent application" was allowable because the claim "require[d] the position of the pivot to remain constant while the pedal arm moves in fore and aft directions with respect to the pivot" (id. ¶ 16 & Ex. 15 at p. 10). That is exactly the design of Asano.

asks whether an alleged invention "simply arranges old elements with each performing the same function that it had been known to perform," or whether a claimed combination produces "a 'new or different function'". Id. (quoting Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 60 (1969) (quoting Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549 (1938))).

In the present case, Claim 4 of the '565 Patent plainly flunks "the test of validity of combination patents." Sakraida, 425 U.S. at 282 (quoting Anderson's-Black Rock, 396 U.S. at 60). The claim purports to combine a pre-existing pedal assembly, such as Asano, with a pre-existing electronic position sensor, such as the CTS 503 series sensor, with both components doing nothing more than each component was designed, individually, to do. Claim 4 of the '565 Patent is thus indistinguishable in principle from the patent claim held invalid in Anderson's-Black Rock, where the claimed invention consisted of combining an old radiant heat burner with an old black top spreader, with neither component performing any new or different function from what they had been designed to do originally. As a matter of law, such a combination is "not an invention by the obvious-nonobvious standard." 396 U.S. at 63. "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." Great Atl., 340 U.S. at 151 (quoting Lincoln Engineering, 303 U.S. at 549).

In view of the uncited Asano reference, the subject matter of claim 4 of the '565 Patent consists of nothing more than following the instructions associated with a CTS 503 Series position sensor and using such a sensor for its intended and designed purpose

on a pre-existing adjustable pedal assembly design (Willemsen Decl. ¶¶ 17-21 & Exs. 8-10). The claim is clearly invalid under 35 U.S.C. § 103.

      **E.**    **Secondary Considerations.**

      KSR is unaware of any secondary considerations as could support a legal conclusion of non-obviousness with respect to the subject matter of claim 4 of the '565 Patent (Willemsen Decl. ¶¶ 42-44). In response to interrogatories directed to this topic, Teleflex identified no secondary considerations tending to show non-obviousness (Dabney Decl. ¶ 6 & Ex. 5, answers to Interrogatory Nos. 8, 13).

      Notably, however, as the Federal Circuit held in Ryko, summary judgment may be granted under 35 U.S.C. § 103 even where a patentee (which Teleflex is not) puts forward evidence of "secondary considerations" favoring patentability. The plaintiff in Ryko submitted affidavits that the claimed invention in that case -- use of an electronic keypad to control a car wash -- had enjoyed commercial success, had met a long felt need, and that others had tried and failed to solve the problem solved by the claimed invention. 950 F.2d at 719. The Federal Circuit nevertheless upheld the District Court's award of summary judgment invalidating the plaintiff's patent under 35 U.S.C. § 103, holding that "secondary considerations did not carry sufficient weight to override a determination of obviousness based on primary considerations," and that "a court is entitled to weight all the considerations, primary and secondary, and then render its decision" on the question of obviousness. Id.

**IV.**    **THE '239 AND '695 PATENTS ARE**
            **INVALID UNDER 35 U.S.C. § 103.**

      For substantially the same reasons that claim 4 of the '565 Patent is invalid under 35 U.S.C. § 103, claim 1 of the '239 Patent and claims 1 and 2 of the '695 Patent are

equally invalid under that statute. The desirability, and thus the obviousness, of using pedal position sensors on vehicle pedal assemblies intended for use in vehicles having electronic throttle controls, described at pp. 23-27, supra, was no less documented as of November 20, 1996 (the critical date for the '239 and '695 Patents under 35 U.S.C. § 102(b)) than it was on January 26, 1998. The level of ordinary skill in the pedal design art was also the same as of both dates (Willemsen Decl. ¶ 20).

It remains only to be demonstrated that, as with the '565 Patent, the prior art considered by the Patent Office during the prosecution of the '239 and '695 Patents did not include a key reference, Huff (see Exhibit 13 hereto; Willemsen Decl. ¶¶ 38-40 & Exs. 13-14), which disclosed the exact mechanical configuration claimed in the '239 and '695 Patents. Figure 2 of Huff is reproduced at right, below; a computer animation of the Huff adjustable pedal assembly is reproduced at left, below (Kruger Decl. ¶ 7 & Ex. 1):



In the above design, an accelerator pedal (62) is pivotally supported for rotation about a first pivot axis (64). An "adjustment element" (42) is pivotally supported on a mounting arrangement (38) for rotation about a second pivot axis (48) that is parallel to

the first. A drive motor (78) is operably connected to the "adjustment element" (42) and causes it to rotate about its pivot axis, thereby causing the pedals also to rotate about that axis. The accelerator pedal (62) is connected to a rod for actuation of a throttle control. Huff was not cited to the Patent Office during prosecution of the '239 Patent or the '695 Patent.

As set forth above, in the animations named "Huff" on Exhibit 1 hereto, and in the claim charts submitted as Exhibits 13 and 14 to the accompanying Declaration of Larry Willemsen, the sole difference between Huff, on the one hand, and the claimed "inventions" of the '239 and '695 Patents, on the other, is the presence of an optional, off-the-shelf pedal position sensor, mounted on an accelerator pedal pivot in exactly the same way as the pedal position sensor in the 1994 GM ETC Pedal, Urset, Rixon '593 and every other prior art pedal position sensor of record.

For all of the reasons set forth on pp. 28-35, above, claim 1 of the '239 Patent and claims 1 and 2 of the '695 Patent are invalid under 35 U.S.C. § 103. As of November 20, 1996, as the Patent Office repeatedly ruled during the prosecution of those patents,[16] there was no patentable novelty in adding on off-the-shelf pedal position sensor to a pre-existing adjustable pedal assembly, such as Huff. A position sensor could have been added to Huff without materially altering the design of Huff (Willemsen Decl. ¶ 41) and an artisan would have been naturally motivated to do this in order to render the Huff design usable in a modern vehicle whose fuel system was managed by an electronic throttle control (id. at ¶ 11). As of November 20, 1996, abundant motivations, incentives, and teachings existed to combine a modular position sensor, such as the CTS 503 Series

37

sensor, with the Huff adjustable pedal assembly.

## CONCLUSION

For all the reasons set forth above, defendant's motion for summary judgment

should granted.


Dated: July 7, 2003                    Respectfully submitted,

                                       DICKINSON WRIGHT PLLC


                                       By _____
                                          Kenneth J. McIntyre (P17450)
                                          L. Pahl Zinn (P57516)
                                          Attorneys for Defendant
                                          500 Woodward Avenue, Suite 4000
                                          Detroit, MI 48226-3425
                                          (313) 223-3500


                                          JAMES W. DABNEY
                                          Pennie & Edmonds LLP
                                          Attorneys for Defendant
                                          1155 Avenue of the Americas
                                          New York, NY 10036
                                          (212) 790-9090

---

[16] See Dabney Decl. ¶ 15 & Ex. 14 at 13; ¶ 14 & Ex. 13 at 3-5.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED