ORIGINAL

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**TELEFLEX INCORPORATED,**

        Plaintiff,

vs.

**KSR INTERNATIONAL CO.,**

        Defendant.

Case No: 02-74586

Hon. Lawrence P. Zatkoff

Magistrate Judge Steven D. Pepe

---

RODGER C. YOUNG (P22652)
STEVEN SUSSER (P52940)
DAVID J. POIRIER (P62928)
Young & Susser, P.C.
Attorneys for Plaintiff
26200 American Drive, Suite 305
Southfield, Michigan 48034
(248) 353-8620

KENNETH J. MCINTYRE (P17450)
L. PAHL ZINN (P57516)
Dickinson Wright PLLC
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226-3425
(313) 223-3500

JAMES W. DABNEY
Pennie & Edmonds LLP
Attorneys for Defendant
1155 Avenue of the Americas
New York, New York 10036
(212) 790-9090

FILED
2003 AUG 26 P 4: 24

---

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT OF INVALIDITY

---

60

## TABLE OF CONTENTS

                                                                                Page(s)

TABLE OF AUTHORITIES ............................................................................... ii

Background ....................................................................................................... 2

Prosecution History of '565 Patent Claim 4 ....................................................... 3

Asano Combined With a Pedal Position Sensor .................................................. 8

I.      "OBVIOUSNESS" IS A QUESTION OF LAW,
        NOT A QUESTION OF FACT. ............................................................ 10

II.     "OBVIOUSNESS" MUST BE DETERMINED BY
        REFERENCE TO SUBJECT MATTER RECITED
        IN AN ASSERTED CLAIM, NOT BY REFERENCE
        TO SUBJECT MATTER "DEPICTED" IN A PATENT ..................................... 13

III.    TELEFLEX ERRONEOUSLY RELIES ON ALLEGED "DIFFERENCES"
        THAT DO NOT EXIST IN ASSERTED CLAIM 4 OF THE '565 PATENT ..... 14

IV.     TELEFLEX IGNORES PRIOR ART TEACHING THE PLACEMENT OF
        PEDAL POSITION SENSORS ON PEDAL SUPPORT BRACKETS ............... 16

V.      SECONDARY FACTORS .................................................................. 19

CONCLUSION ................................................................................................ 20

DETROIT 27700-1 748754

i

**TABLE OF AUTHORITIES**

**Page(s)**

Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp.,
 294 U.S. 477 (1935)............................................................................18

Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,
 396 U.S. 57 (1969)........................................................................18, 20

Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,
 853 F.2d 1557 (Fed. Cir. 1988)..........................................................11

Badalamenti v. Dunham's, Inc.,
 680 F. Supp. 256 (E.D. Mich.)m aff'd mem., 862 F.2d 322 (Fed. Cir. 1988) .............11

In re Baker Hughes, Inc.,
 215 F.3d 1297 (Fed. Cir. 2000)..........................................................18

In re Carlson,
 983 F.2d 1032 (Fed. Cir. 1992)..........................................................16

Celeritas Techs. Ltd. v. Rockwell Int'l Co.,
 150 F.3d 1354 (Fed. Cir. 1998), cert. denied, 525 U.S. 1106 (1999) ...........................18

Dow Chem. Co. v. Halliburton Oil Well Cementing Co.,
 324 U.S. 320 (1945)...........................................................................20

E.I. Du Pont de Nemours & Co.,
 849 F.2d 1430 (Fed. Cir), cert. denied, 498 U.S. 986 (1988) .....................................15

In re GPAC Inc.,
 57 F.3d 1573 (Fed. Cir. 1995).............................................................12

General Elec. Co. v. Wabash Co.,
 304 U.S. 364 (1938)...........................................................................13

Graham v. John Deere Co.,
 383 U.S. 1 (1966)...................................................................10, 16, 18

Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,
 336 U.S. 271 (1949)...........................................................................15

Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.,
 340 U.S. 147 (1950)...........................................................................18

ii

Hailes v. Van Wormer,
    87 U.S. (20 Wall.) 353 (1873) ...................................................................................18

Holland Furniture Co. v. Perkins Glue Co.,
    277 U.S. 245 (1928).................................................................................................13

In re Katz,
    933 F.2d 982 (Fed. Cir. 1991)................................................................................16

Lear, Inc. v. Adkins,
    395 U.S. 653 (1969).................................................................................................18

Lincoln Engineering Co. v. Stewart-Warner Corp.,
    303 U.S. 545 (1938).................................................................................................18

Netword, LLC v. Centraal Corp.,
    242 F.3d 1347 (Fed. Cir. 2001)..................................................................................4

Newell Co. v. Kenney Mfg. Co.,
    864 F.2d 757 (Fed. Cir. 1988), cert. denied, 493 U.S. 814 (1989) .................10, 12

Peterson Mfg. Co. v. Central Purchasing, Inc.,
    740 F.2d 1541 (Fed. Cir. 1984)..............................................................................11

Pfaff v. Wells Elecs., Inc.,
    525 U.S. 55 (1998).....................................................................................................8

Pickering v. McCullough,
    104 U.S. 310 (1881).................................................................................................18

Reckendorfer v. Faber,
    92 U.S. 347 (1875)...................................................................................................18

Ryko Mfg. Co. v. Nu-Star, Inc.,
    950 F.2d 714 (Fed. Cir. 1991)...........................................................................11, 19

Sakraida v. Ag Pro, Inc.,
    425 U.S. 273 (1976).....................................................................................18, 19, 20

Structural Rubber Prods., Inc. v. Park Rubber Co.,
    749 F.2d 707 (Fed. Cir. 1984)...........................................................................11, 12

Toledo Pressed Steel Co. v. Standard Parts, Inc.,
    307 U.S. 350 (1939).................................................................................................18

United Carbon Co. v. Binney & Smith Co.,
 317 U.S. 228 (1942)........................................................................................13

## STATUTES AND RULES

35 U.S.C. § 102(a) ...........................................................................................1

35 U.S.C. § 102(b) ...........................................................................................8

35 U.S.C. § 102(e) ...........................................................................................8

35 U.S.C. § 103(a) .................................................................2, 5, 7, 11, 12, 13,
 14, 16, 18, 19, 20

35 U.S.C. § 112 ¶ 2 ..........................................................................................6

35 U.S.C. § 253 ................................................................................................1

Fed. R. Civ. P. 56(c) ........................................................................................2

Fed. R. Civ. P. 56(c) ........................................................................................2

DETROIT 27700-1 748755

On August 8, 2003, plaintiff Teleflex Inc. ("Teleflex") and non-party Technology Holding Company ("THC") stipulated to the dismissal, with prejudice, of Teleflex's claims in this action alleging infringement of U.S. Patent No. 6,305,239 B1 (the "'239 Patent") and U.S. Patent No. 6,374,695 B1 (the "'695 Patent"), in view of published French Patent Application No. 2,739,947 to Urset (see Exhibit 1 hereto, at 2).[1]

This Court on August 11, 2003, ordered the dismissal, with prejudice, of the second and third claims for relief asserted in Teleflex's Second Amended Complaint filed November 18, 2002 (id.). This Court further "ORDERED that the '239 Patent and the '695 Patent be and are dedicated to the public under 35 U.S.C. § 253" (id. at 3). In view of these developments, the Court need not take any further action on KSR's pending Motion for Summary Judgment of Invalidity filed July 7, 2003, insofar as the '239 and '695 Patents are concerned.[2]

With regard to plaintiff's lone surviving claim for alleged infringement of Claim 4 of U.S. Patent No. 6,237,565 B1 (the "'565 Patent"), Teleflex's Response to KSR's Motion for Summary Judgment of Invalidity ("Pltf. Opp. Br.") does not address or controvert a single one of the facts presented by KSR in support of its defense of

---

[1] The Urset reference clearly invalidated the '239 and '695 Patents under 35 U.S.C. § 102(a), as demonstrated in Exhibits 6 and 7 of the Declaration of Larry Willemsen filed July 7, 2003 (hereinafter, "Willemsen Decl.") and in the computer animation files named "Urset" in Exhibit 1 to the Declaration of Daniel H. Kruger filed July 7, 2003 (hereinafter, "Kruger Decl."). See also KSR's Brief in Support of Defendant's Motion for Summary Judgment of Invalidity filed July 7, 2003 ("KSR Main Br.") at 4-5, 16-19, and Exhibit 1.

[2] It is a measure of this lawsuit's unusual character that Teleflex and THC totally abandoned the '239 and '695 Patents scarcely a month after Teleflex filed a Motion for Summary Judgment of Infringement of those same patents on July 7, 2003.

invalidity under 35 U.S.C. § 103 (a) (Willemsen Decl. ¶¶ 1-22, 32-44 & Exs. 1-2, 8-12; Kruger Decl. ¶¶ 4-6, 25-30 & Ex. 1; see KSR Main Br. at 1-11, 19-35 & Exs. 1, 5-12).

Thus, under Fed. R. Civ. P. 56(c) and (e), this Court can and should determine that there is no genuine issue to be tried as to any of the following facts:

**Background**

-- As of January 26, 1998, the design of accelerator pedals installed in cars and light trucks sold in the United States was substantially determined by the type of engine and fuel system that an automaker specified was going to be installed in a vehicle (Willemsen Decl. ¶¶ 11, 22).

-- As of January 26, 1998, an increasing number of vehicles sold in the United States came equipped with electronic throttle control systems ("ETC's"), because such systems offered various operational advantages over cable-actuated throttle control systems such as reduced emissions, improved fuel economy, simplified cruise controls, and improved slip reduction (Willemsen Decl. ¶¶ 9, 34; see KSR Main Br. at 23-24 & Exs. 7-8).

-- As of January 26, 1988, vehicles equipped with electronic throttle controls, by their very nature, required the use of electronic sensors capable of sensing an accelerator pedal's position and emitting electrical signals corresponding to the pedal's position (Willemsen Decl. ¶ 11, 22).

-- As of January 26, 1998, whether a vehicle pedal assembly actuated a cable, or an electronic position sensor, was dependent on the type of fuel system the pedal was being designed to actuate (Willemsen Decl. ¶ 22).

2

-- As of January 26, 1998, one or more companies in the United States including CTS Corporation of Elkhart, Indiana ("CTS") made and sold modular electronic pedal position sensors that (a) were specifically designed to engage the pivot of an accelerator pedal, and (b) were specifically intended and marketed for use to actuate electronic controls in vehicles, as exemplified by the "position sensor and switch assembly 17" disclosed in U.S. Patent No. 5,385,068 filed December 18, 1992 (Willemsen Decl. ¶ 12; KSR Main Br. at 25 & Ex. 10), and as further exemplified by the CTS "503 Series" sensor installed in certain 1994 Chevrolet C/K pick-up trucks (id. ¶¶ 14-19 & Exs. 8-10).

-- As of January 26, 1998, coupling a position sensor to a vehicle's accelerator pedal pivot shaft (with the sensor housing attached to the pedal's support bracket) was a standard technique used to enable accelerator pedals to communicate with and actuate electronic throttle controls (Willemsen Decl. ¶¶ 13, 21), as shown in various printed publications in the prior art (e.g., KSR Main Br. Ex. 9, disclosing "potentiometer 12" mounted to "side wall 18" of "support structure 4" and engaged with "axial shaft 76"; KSR Main Br. Ex 10, disclosing "position sensor 17" mounted on "moving bracket 11" and engaged with "shaft 13"), and as further as exemplified by the accelerator pedals installed in certain 1994 Chevrolet C/K pick-up trucks (id. ¶¶ 14-19 & Exs. 8-10).

**Prosecution History of '565 Patent Claim 4**

-- The '565 Patent issued on U.S. Application No. 09/643,422 filed August 22, 2000 (the "'422 Application"). The '422 Application was a "continuation" of U.S. Application No. 09/236,975 filed January 26, 1999 (the "'975 Application"). The latter application matured into U.S. Patent No. 6,109,241 issued August 29, 2000 (the "'241 Patent").

3

-- Concurrently with the filing of the '422 Application, Teleflex filed a "Preliminary Amendment" which cancelled all claims that had been made in the "parent" '975 Application, and set forth four new claims designated "Claims 20-23" (see Exhibit 2 hereto; Third Declaration of James W. Dabney, sworn to August 25, 2003 [hereinafter, "Third Dabney Decl."] ¶ 3 & Ex. 2).

-- As shown in Exhibit 2 hereto, the original "Claims 20-23" filed by Teleflex in the '422 Application each recited (a) "a support (18) for mounting to a vehicle structure"; (b) "a guide member (62) rotatably supported by said support (18) for pivotal movement about a pivot axis"; (c) "a pedal arm (14) supported on said guide member (62) for rectilinear movement in fore and aft directions relative to said guide member (62) and said pivot axis (26) between various adjusted positions"; and (d) "an electronic control (28) supported on said support (18) and responsive to pivotal movement of said pedal arm (14) and said guide member (62) about said pivot axis" (see Exhibit 2). The original claims were silent with respect to whether the recited pedal pivot axis remained constant during "rectilinear movement in fore and aft directions" (id).[3]

_____

[3] It bears noting that, unlike asserted Claim 4 of the '565 Patent, the original Claims 20-23 of the '422 Application recited structure (e.g., "a guide member (62) rotatably supported") comprising the alleged "invention" described in the application -- structure that clearly does not exist in the accused GMT-360 and GMT-800 pedal systems manufactured by KSR. In asserting that the accused GMT-360 and GMT-800 pedal systems purportedly embody the "invention" described in the '565 Patent, Teleflex simply ignores that "claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose." Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1352 (Fed. Cir. 2001). "[N]either do the claims enlarge what is patented beyond what the inventor has described as the invention." Id.

-- In an Office Action dated November 6, 2000 (see Exhibit 3 hereto), the Examiner of the '422 Application rejected each of the original "Claims 20-23" as being unpatentable under 35 U.S.C. § 103(a) in view of two references, namely, U.S. Patent No. 5,460,061 to Redding ("Redding"; see Exhibit 4 hereto) and U.S. Patent No. 5,063,811 to Smith ("Smith"; see Exhibit 5 hereto). Redding discloses an adjustable accelerator pedal assembly whose accelerator pedal arm (20) slides back and forth along a guide member (72) (see Exhibit 4 hereto). Smith discloses an electronic pedal position sensor (28) attached to an accelerator pedal support bracket (40, 26) and engaged with a pivot shaft (70) (see Exhibit 5 hereto).

-- In concluding that the subject matter recited in original "Claims 20-23" was unpatentable under 35 U.S.C. § 103(a), the Examiner stated (see Exhibit 3 hereto, at 2):

> Smith shows that the use of an electronic throttle control means (28) attached to a support member (40, 26) in a pedal assembly is old and well known in the art. Since the prior art references are from the field of endeavor, the purpose disclosed by Brown [sic] would have been recognized in the pertinent art of Redding. Therefore, it would have been obvious at the time the invention was made to provide the device of Redding with the electronic throttle control means attached to a support member as taught by Smith.

-- In response to the Examiner's rejection of its original claims, Teleflex did not traverse, or voice any disagreement with, any of the Examiner's reasoning or conclusions quoted above. Teleflex made no argument, for example, that the subject matter recited in original "Claims 20-23" was patentable because the recited "electronic control" was "attached to the pedal mounting bracket," as opposed to being "attached to the pedal itself," as Teleflex now asserts for the first time in opposition to summary judgment (Pltf. Opp. Br. at 10-11). Teleflex also did not traverse, or voice any disagreement with, the Examiner's conclusion that at the time of the alleged "invention," a person of ordinary

5

skill in the art of the '422 Application would have been motivated to combine, and would

have considered it obvious to combine, the electronic position sensor disclosed in Smith

(see Exhibit 5 hereto) with the adjustable pedal assembly disclosed in Redding (see

Exhibit 4 hereto) to arrive at what Teleflex was then pointing to, in original Claims 20-

23, as the subject matter that Mr. Engelgau purportedly regarded as his "invention."[4]

    -- Instead, by a further Amendment of the '422 Application dated January 29,

2001 (see Exhibit 6 hereto), Teleflex's patent counsel submitted a wholly new Claim 24

(which became Claim 4 of the '565 Patent) which excluded the Redding pedal design

from the scope of the subject matter sought to be patented through addition of the

limitation, "wherein the position of said pivot (24) remains constant while said pedal arm

(14) moves in fore and aft directions with respect to said pivot (24)" (see Exhibit 6

hereto, at 2).   The Redding reference, by contrast, disclosed an adjustable pedal assembly

whose accelerator pedal pivot moved during adjustment (see Exhibit 3 hereto at col. 7,

lines 33-38; "As the pedal arm moves fore and aft relative to the adjuster member, cam

pin 112 rides in cam member slot 76d to . . . selectively adjust the position of pivot axis

pin 110").

    -- Having thus restated the subject matter sought to be patented using claim

language that excluded the adjustable pedal design disclosed in Redding, Teleflex's

patent counsel then stated to the Examiner: "Independent claim 24 is a duplicate of claim

15 in the parent application except the word 'throttle' has been eliminated from claim 15

---

[4] 35 U.S.C. § 112 ¶ 2 requires, as a condition to the issuance of a valid patent, that the
"specification" of a patent application "conclude with one or more claims particularly
pointing out and distinctly claiming the subject matter which the applicant regards as his
invention."

just in case there could be an argument that claim 15 does not cover the control of a brake system. Accordingly, claim 24 is allowable for the same reasons claim 15 was allowed in parent patent 6,109,241" (see Exhibit 6 hereto, at 3).

-- The prosecution history of the "parent patent 6,109,241" exhibits the same pattern as the prosecution history of the '565 Patent: Teleflex originally filed claims reciting "an adjustable pedal assembly (22)" in combination with "an electronic throttle control attached to said support (18)" (see Exhibit 7 hereto, at 7); the claims, as originally filed, were declared unpatentable under 35 U.S.C. § 103(a) in view of Redding and prior art showing that "it would have been obvious at the time the invention was made to a person having ordinary skill in the art to provide the device of Redding with the electronic throttle control means attached to a support member" (see Exhibit 8 hereto); and once again, without disagreeing, at all, with the Examiner's reasoning or conclusions as to the obviousness and unpatentability of modifying Redding to include an off-the-shelf pedal position sensor, Teleflex amended what became Claim 15 of the parent '241 Patent to exclude the Redding design from its coverage through addition of the claim language, "wherein the position of said pivot (24) remains constant while said pedal arm (14) moves in fore and aft directions with respect to said pivot (24)" (see Exhibit 9 hereto, at 2).

-- During the prosecution of the '565 Patent and its parent, Teleflex submitted three (3) separate Information Disclosure Statements ("IDS's") purporting to disclose prior art of which Teleflex and its patent counsel were aware (see Exhibit 10 hereto). In not one of those statements did Teleflex disclose U.S. Patent No. 5,010,782 to Asano ("Asano") or U.S. Patent No. 5,722,302 to Rixon ("Rixon '302"), notwithstanding that (a)

7

Teleflex's counsel admittedly was aware of both references at relevant times (KSR Main Br. at 22 & n.12); and (b) both references disclosed adjustable pedal assemblies whose pedal pivots did not move during pedal arm adjustment (see Willemsen Decl. ¶¶ 34-37 & Exs.11-12; Kruger Decl. ¶¶ 4-6, 25-30 & Ex. 1).[5]

**Asano Combined With a Pedal Position Sensor**

-- Asano discloses each and every structure recited in claim 4 of the '565 Patent, with the exception of "an electronic control (28) attached to said support (18) for controlling a vehicle system" (see Exhibit 11 hereto; Willemsen Decl. ¶ 35 & Ex. 12; Kruger Decl. ¶ 5 & Ex. 1). Unlike the Redding reference described above, Asano (KSR Main Br. at 22 & Exs. 1, 6) discloses a position-adjustable pedal assembly (a) whose entire pedal arm (74) moves in rectilinear, "fore and aft" directions along a guide member, and (b) whose pedal pivot (54) remains in a constant position while the pedal arm (74) moves in "fore and aft" directions with respect to the pivot (Kruger Decl. ¶ 5 & Ex. 1).[6]

---

[5] Rixon '302 issued on an application filed October 2, 1996, and unquestionably constituted prior art to the parent '241 Patent under 35 U.S.C. 102(e). Since the filing of KSR's Motion for Summary Judgment of Invalidity, Teleflex has produced documents (Third Dabney Decl. ¶ 12) which establish, clearly and convincingly, that the accelerator pedals embodying the Rixon '302 design were commercially offered for sale by no later than October 24, 1996, thus rendering that design prior art to the '565 Patent under 35 U.S.C. § 102(b). See Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 68-69 (1998) (offer of product for sale triggers application of 35 U.S.C. § 102(b)). Teleflex ironically cites and relies on Rixon '302 in its opposition (see Declaration of Timothy L. Andresen filed August 11, 2003, ¶ 4).

[6] Unlike the design embodied in the accused GMT-360 and GMT-800 pedal systems manufactured by KSR, Asano discloses an adjustable pedal system comprising a guide member (52) and a pedal arm (74) that slides in its entirety along the guide member.

8

-- Conventional, off-the-shelf pedal position sensors that were on sale in the United States as of January 26, 1998, including CTS "503 Series" sensors, could have been attached to the accelerator pedal support bracket (50) disclosed in Figure 5 of Asano, for engagement with the disclosed accelerator pedal's pivot shaft (54), without materially altering the Asano pedal (Willemsen Decl. ¶ 36; Kruger Decl. ¶ 6 & Ex. 1).

-- Submitted with KSR's Main Brief was a specimen CTS "503 Series" pedal position sensor of a type that was on sale in the United States prior to January 26, 1998 (Willemsen Decl. ¶¶ 18-19 & Exs. 9-10). The housing of the submitted CTS "503 Series" sensor includes two holes for mounting surface fasteners, such as screws (id.).

-- CTS "503 Series" sensors are modular, completely enclosed units with openings designed to fit over and engage a vehicle pedal's pivot shaft (Willemsen Decl. ¶ 19 & Exs. 9-10). The modular design of CTS "503 Series" position sensors enables those sensors to be installed on different makes and models of vehicle accelerator pedal assemblies (Willemsen Decl. ¶ 19).

-- As of January 26, 1998, CTS provided specifications identifying minimum requirements (for example, minimum surface requirements for attachment points) that any person of ordinary skill in the pedal design art could follow and use to design a pedal assembly that would actuate a CTS 503 Series sensor (Willemsen Decl. ¶ 21 & Ex. 9).

-- The computer animation file named "Asano_565_claim_4.mpeg", submitted as part of Exhibit 1 to KSR's Main Brief, contains true and accurate representations of (a) the position-adjustable pedal disclosed in Figure 5 of Asano, (b) the accelerator pedal installed in certain 1994 GM pick-up trucks (the "1994 GM ETC Pedal"), and (c) how the modular, CTS "503 Series" position sensor attached to the support of the 1994 GM ETC

9

Pedal could be similarly attached to the support of the Asano pedal (Kruger Decl. ¶¶ 4-6 & Ex. 1; Willemsen Decl. ¶¶ 35-37, 41 & Ex. 12).

-- As of January 26, 1998, a person of "ordinary" skill in the art of the '565 Patent would have had a minimum of two (2) years of college level training in mechanical engineering and 2-3 years' work experience spanning at least one complete pedal design "cycle" (Willemsen Decl. ¶ 20).[7]

## I. "OBVIOUSNESS" IS A QUESTION OF LAW, NOT A QUESTION OF FACT.

Teleflex asserts that summary judgment is inappropriate because "the true issue between the parties" supposedly is: "Whether as a factual question, the Engelgau Patent would have been obvious to one of ordinary skill in the art" (Pltf. Opp. Br. at 1; emphasis added).[8] In fact, as was set forth in KSR's Main Brief (KSR Main Br. at 19), "the ultimate question of patent validity is one of law." Graham v. John Deere Co., 383 U.S. 1, 17 (1966). "[W]here the ultimate legal conclusion of obviousness is disputed, but not the underlying facts, there is no issue of fact requiring a trial, even though some facts favor obviousness, some nonobviousness." Newell Co. v. Kenney Mfg. Co., 864 F.2d 757, 763 (Fed. Cir. 1988), cert. denied, 493 U.S. 814 (1989).

---

[7]  Plaintiff contends that a person of "ordinary" skill in the art of the '565 Patent would have even more education than KSR believes he or she would have (Pltf. Opp. Mem. at 12 n.9).   For purposes of the present motion the Court may assume the correctness of plaintiff's position.  Teleflex acknowledges that "[r]egardless of which definition this Court chooses to adopt, the obviousness analysis would remain substantially unaffected" (id.).

[8]  As described infra, besides erroneously asserting that "obviousness" is "a factual question," Teleflex's opposition is also erroneous in its focus on the "Engelgau Patent,"

Here there is no dispute as to any of the facts put forward by KSR in support of its Motion for Summary Judgment of Invalidity, as summarized above.[9]  Rather, the question raised to the Court is purely one of law, namely, whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).  It is well-settled that "a district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material facts."  Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714, 716 (Fed. Cir. 1991).

It is equally well-settled that "[o]pinion testimony by experts concluding that an invention would or would not have been obvious . . . raise no issue of fact."  Peterson Mfg. Co. v. Central Purchasing, Inc., 740 F.2d 1541, 1548 (Fed. Cir. 1984) (affirming summary judgment of invalidity under 35 U.S.C. § 103).  Accord Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1562-64 (Fed. Cir. 1988) ("a conflict in the legal opinions of experts creates no dispute of fact").  It is, thus, no bar to summary judgment

---

(Pltf. Opp. Br. at 6), rather that on the subject matter recited in asserted Claim 4 of the '565 Patent.

[9]  In view of Teleflex's failure to controvert any of the factual predicates put forward by KSR in support of summary judgment, Teleflex's discussion of the "burden of proof" (Pltf. Opp. Br. at 5-6) is beside the point. Regardless of how much proof constitutes "clear and convincing evidence" of a factual contention, KSR's factual contentions here -- e.g., the disclosure of Asano -- are totally undisputed.  In such circumstances, "the entire question of obviousness is one for the court."  Badalamenti v. Dunham's, Inc., 680 F. Supp. 256, 259 (E.D. Mich.) (Feikens, J.), aff'd mem., 862 F.2d 322 (Fed. Cir. 1988). See Structural Rubber Prods., Inc. v. Park Rubber Co., 749 F.2d 707, 721 (Fed. Cir. 1984).

that Teleflex has found two experts who apparently are prepared to say, in conclusory fashion, that "the Engelgau Patent involved a combination of elements that would not have been obvious to one of ordinary skill in the art" (Pltf. Opp. Br. at 12-13). "That the parties fervently dispute the ultimate conclusion of obviousness is not enough to raise a factual question." Structural Rubber Prods., Inc. v. Park Rubber Co.,749 F.2d 707, 721 (Fed. Cir. 1984).

"Whether a reference or a combination of references renders a claimed invention obvious under 35 U.S.C. § 103 is a question of law subject to full and independent review in this court." In re GPAC Inc., 57 F.3d 1573, 1577 (Fed. Cir. 1995). KSR's motion calls upon the Court to determine that the combination of (a) Asano and (b) an off-the-shelf pedal position sensor, such as the CTS "503 Series" sensor, renders the subject matter of asserted claim 4 of the '565 Patent unpatentable as a matter of law, just as the Patent Office earlier ruled that the similar combination of Redding and Smith, described above, was unpatentable under 35 U.S.C. § 103(a) (see Exhibits 3-5 hereto). "[W]here the only issue is, as here, the application of the statutory standard of obviousness (35 U.S.C. § 103) to an established set of facts, there is only a question of law to be resolved by the trial judge." Newell, 864 F.2d at 762.

## II. "OBVIOUSNESS" MUST BE DETERMINED BY REFERENCE TO SUBJECT MATTER RECITED IN AN ASSERTED CLAIM, NOT BY REFERENCE TO SUBJECT MATTER "DEPICTED" IN A PATENT.

On the legal question of validity, the entire thrust of Teleflex's opposition to summary judgment is misdirected and erroneous, for it focuses on "the design depicted in the Engelgau Patent" (Plft. Opp. Br. at 6; emphasis added), rather than "the subject matter sought to be patented," 35 U.S.C. § 103(a), that is, the subject matter recited in asserted Claim 4 of the '565 Patent.

In writing Claim 4 of the '565 Patent, Teleflex's patent counsel chose to describe the alleged "invention" in terms (e.g., "an adjustable pedal assembly (22) having a pedal arm (14) moveable in fore and aft directions") that omitted any description of the physical characteristics and arrangement of the structures depicted in the drawings of the '565 Patent.[10] Far from limiting asserted Claim 4 to the "design depicted in the Engelgau Patent" (Pltf. Opp. Br. at 6), the '565 Patent specification actually states that "[t]he adjustable pedal assembly 22 can be any of various adjustable pedal assemblies known in the art" ('565 Patent at col. 2, lines 55-56; see KSR Main Br. & Ex. 5). It is that sweeping claim -- not the "design depicted in the Engelgau Patent" -- that the Court must evaluate

---

[10] As KSR has elsewhere argued (see Brief in Opposition to Plaintiff's Two Motions for Summary Judgment of Infringement filed July 28, 2003, at 28-29), besides being invalid under 35 U.S.C. § 103, asserted claim 4 of the '565 Patent represents a classic violation of "the doctrine that a patentee may not broaden his product claims by describing the product in terms of function." General Elec. Co. v. Wabash Co., 304 U.S. 364, 371 (1938). Accord United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 243 (1942); Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 257 (1928). It was only by describing Mr. Engelgau's alleged "invention" in terms of its "function", and omitting reference to the physical structures comprising the "invention", that Teleflex could even argue that KSR was making or selling pedal systems embodying that alleged "invention". This is a separate and independent ground for awarding summary judgment to KSR.

13

for validity under 35 U.S.C. § 103(a), in view of (a) Asano and (b) electronic pedal position sensors, such as the CTS "503 Series" sensor, that were specifically designed to be attached to vehicle pedal's pivot and support bracket (e.g., KSR Main Br. at 25 & Ex. 10), such as the pivot (54) and support bracket (50) disclosed in Figure 5 of Asano (KSR Main Br. at 22 & Ex. 6).

### III. TELEFLEX ERRONEOUSLY RELIES ON ALLEGED "DIFFERENCES" THAT DO NOT EXIST IN ASSERTED CLAIM 4 OF THE '565 PATENT.

Teleflex does not dispute that Asano, in combination with an off-the-shelf pedal position sensor, meets each and every limitation of asserted claim 4 of the '565 Patent (Willemsen Decl. ¶ 35 & Ex. 12; Kruger Decl. ¶ 5 & Ex. 1). Teleflex also does not dispute that combining Asano with an off-the-shelf position sensor would have been obvious to a person of ordinary skill in the art of the '565 Patent, just as the Patent Office ruled that combining Redding with such a sensor would have been unpatentably obvious during prosecution of the '565 Patent (see Exhibits 3-5 and 8 hereto), a ruling that Teleflex repeatedly acquiesced in (see Exhibits 6, 9 hereto).

Yet according to Teleflex, summary judgment should be denied because "combining Asano with an electronic control would not have solved any of the problems confronting Engelgau in his design of the Engelgau Patent" (Pltf. Opp. Br. at 15). This is so, Teleflex argues, because "someone in Engelgau's shoes, who was trying to create an adjustable pedal assembly with an attached electronic control that was easy to package in a narrow space and was also relatively simple and inexpensive, would shun Asano" (Pltf. Opp. Br. at 20; emphasis added).

Teleflex's argument is erroneous at several levels.  In the first place, Teleflex's argument simply ignores the language of asserted claim 4 of the '565 Patent.  Claim 4 of the '565 Patent is not limited to adjustable pedal assemblies that are  "inexpensive", "more easily assembled", or "more conveniently packaged" (Pltf. Opp. Br. at 11, 18).  Claim 4 of the '565 Patent similarly does not exclude adjustable pedal assemblies that are "complicated," "expensive", "time consuming to assemble", or "require a significant amount of packaging space" (id. at 11, 19).  Even assuming, for purposes of argument, that differences of this sort existed between the design disclosed in Asano and "the design depicted in the Engelgau Patent" (id. at 6), those alleged differences cannot be relied on to withstand summary judgment, for Teleflex's assignor(s) included no such limitations in asserted claim 4 of the '565 Patent.  E.g., Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 336 U.S. 271, 277 (1949); E.I. Du Pont de Nemours & Co., 849 F.2d 1430, 1433-34 (Fed. Cir.), cert. denied, 498 U.S. 986 (1988).[11]

For similar reasons, Teleflex's assertion, "combining Asano with an electronic control would not have solved any of the problems confronting Engelgau in his design of the Engelgau Patent" (Pltf. Opp. Br. at 15), is legally irrelevant, for asserted Claim 4 of the '565 Patent "reads on" precisely that combination (see Exhibit 11 hereto; Kruger Decl. ¶ 5 & Ex. 1; Willemsen Decl. ¶ 35 & x. 12).  Furthermore, the standard of patentability

---

[11]  As noted above, Teleflex and THC produced documents on July 29, 2003, demonstrating that the accelerator pedal described in Rixon '302 constitutes prior art to the '565 Patent (Third Dabney Decl. ¶ 12).  The mechanical configuration of the accelerator pedal disclosed in Rixon '302 is virtually identical to that disclosed in the '565 Patent.  See Kruger Decl. ¶¶ 28-30 & Ex. 1.  Thus even assuming, for purposes of argument, that there were any relevance to unclaimed "differences" between Asano and the subject matter recited in claim 4 of the '565 Patent, no such differences exist with respect to Rixon '302.

under 35 U.S.C. § 103(a) is not what would have been obvious to Mr. Engelgau (Pltf. Opp. Mem. at 18), but what would have been obvious to "the hypothetical person of ordinary skill in the art who is charged with knowledge of all the contents of the relevant prior art." In re Carlson, 983 F.2d 1032, 1037-38 (Fed. Cir. 1992).

Where, as here, "the references are all in the same or analogous fields, knowledge thereof by the hypothetical person of ordinary skill is presumed." In re Katz, 933 F.2d 982, 986 (Fed. Cir. 1991). Teleflex's assertion that a person of ordinary skill in the art of the '565 Patent, seeking to develop the subject matter recited in Claim 4 of that patent, would have "shunned Asano" (Pltf. Opp. Br. at 20) is thus erroneous as a matter of law.

## IV. TELEFLEX IGNORES PRIOR ART TEACHING THE PLACEMENT OF PEDAL POSITION SENSORS ON PEDAL SUPPORT BRACKETS.

Teleflex's assertion that "[t]he Engelgau Patent provided a feature previously unavailable, specifically, an electronic throttle control attached to the support for controlling an engine throttle" (Pltf. Opp. Br. at 18), as distinguished from being "attached to the pedal itself" (id. at 11), is unsupported and contrary to the record. In fact, during the prosecution of the '565 Patent and its parent, Teleflex acquiesced in the Patent Office's conclusion that "the use of an electronic throttle control means (28) attached to a support member (40, 26) in a pedal assembly is old and well-known in the art" (see Exhibit 3 hereto, at 2; emphasis added). Cf. Deere, 383 U.S. at 34-35 (holding patent invalid where allegedly novel feature was disclosed in prior art).

The prior art further and expressly teaches the preferability of pedal position sensors being mounted adjacent to, and engaged with, an accelerator pedal's pivot shaft, regardless of where such a pivot shaft might be located (Willemsen Decl. ¶¶ 13-21 &

Exs. 8-10; KSR Main Br. at 23-27). The optional position sensor (42) disclosed in the '565 Patent <u>follows</u> this teaching. Teleflex's assertion that "[t]he novelty of the Engelgau Patent stems from the decision to separate the pedal from the electronic control" (Pltf. Opp. Br. at 11) flies in the face of the '565 Patent itself: the optional position sensor (42) disclosed in the '565 Patent is engaged with the pivot shaft (54) of the disclosed position-adjustable pedal assembly (22), in precisely the same way as is shown in the prior art (KSR Main Br. at 25 & Exs. 9-10).

The prosecution history of the '565 Patent also belies Teleflex's speculation (Pltf. Opp. Mem. at 20) that the Examiner of the '565 Patent application supposedly recognized the invalidity arguments put forward by KSR herein, and supposedly formed a legal conclusion as to the patentability of claim 4 of the '565 Patent notwithstanding those arguments. As described at pp. 3-7 above, Teleflex procured allowance of claim 4 of the '565 Patent by (a) filing an amendment to its original claims that the added limitation, "wherein the position of said pivot (24) remains constant while said pedal arm (14) moves in fore and aft directions with respect to said support" (<u>compare</u> Exhibit 2 hereto <u>with</u> Exhibit 6 hereto), and then (b) arguing that <u>with this</u> <u>limitation</u>, the subject matter of Claim 4 allegedly was patentably distinct from the prior art. Teleflex's prosecution amendment and argument are flatly inconsistent with its theory, put forward for the first time in opposition to summary judgment, that the "non-moving pivot" limitation added by the amendment was known to exist in a <u>brake</u> pedal system disclosed in U.S. Patent No. 5,632,183 to Rixon (Pltf. Opp. Br. at 20).

At all events, "[a] patent, in the last analysis, simply represents a legal conclusion reached by the Patent Office", typically "in an <u>ex parte</u> proceeding, without the aid of the

arguments which could be advanced by parties interested in proving patent invalidity."
Lear, Inc. v. Adkins, 395 U.S. 653, 670 (1969). Such legal conclusions are not binding
on this Court, and indeed are not even subject to "deference" on direct appeal from
determinations of the Patent Office in inter partes proceedings. See In re Baker Hughes,
Inc., 215 F.3d 1297, 1300 (Fed. Cir. 2000). Whatever unarticulated legal reason(s) may
have lain behind the Examiner's allowance of '565 Patent claim 4 following his receipt of
an argument that Teleflex now attempts to disavow, those unknown and unknowable
reason(s) have no bearing on KSR's motion. Cf. Celeritas Techs. Ltd. v. Rockwell Int'l
Co., 150 F.3d 1354, 1360-61 (Fed. Cir. 1998), cert. denied, 525 U.S. 1106 (1999) (patent
held invalid over reference that had been disclosed to Patent Office).

Teleflex's opposition also ignores a legion of Supreme Court decisions holding
that "[t]he mere aggregation of a number of old parts or elements, which, in the
aggregation, perform or produce no new or different function or operation than that
theretofore performed or produced by them, is not patentable invention." Great Atl. &
Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152 (1950).[12] Here it is
undisputed that asserted claim 4 of the '565 Patent, as written, merely "unite[s] old

---

[12] Accord Sakraida v. Ag Pro, Inc., 425 U.S. 273, 281-82 (1976); Anderson's-Black
Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 60 (1969); Toledo Pressed Steel Co. v.
Standard Parts, Inc., 307 U.S. 350, 355-56 (1939); Lincoln Engineering Co. v. Stewart-
Warner Corp., 303 U.S. 545, 549 (1938); Altoona Publix Theatres, Inc. v. American Tri-
Ergon Corp., 294 U.S. 477, 486 (1935); Pickering v. McCullough, 104 U.S. 310, 318
(1881); Reckendorfer v. Faber, 92 U.S. 347, 356-57 (1875); Hailes v. Van Wormer, 87
U.S. (20 Wall.) 353, 368 (1873). Teleflex's assertion that "Courts traditionally have been
skeptical of" invalidity challenges based on obviousness (Pltf. Opp. Mem. at 7) is
unsupported and insupportable. The Supreme Court has "observed a notorious difference
between the standards applied by the Patent Office and by the courts." Graham v. John
Deere Co., 383 U.S. 1, 18 (1966) (holding two patents invalid under 35 U.S.C. § 103).

elements with no change in their respective functions," <u>Sakraida</u> v. <u>Ag Pro, Inc.</u>, 425 U.S. 273, 281 (1976) (quoting <u>Great Atl.</u>, 340 U.S. at 152), and thus clearly fails "the test of validity of combination patents." <u>Sakraida</u>, 425 U.S. at 282 (quoting <u>Anderson's-Black Rock, Inc.</u> v. <u>Pavement Salvage Co.</u>, 396 U.S. 57, 60 (1969)). This is a separate and independent ground for awarding summary judgment to KSR.

## V.   SECONDARY FACTORS

As its final ground of opposition, Teleflex relies on an Affidavit of Charles Meier ("Meier Aff.") stating that "[t]he adjustable pedal assembly design referenced in the Engelgau patent (U.S. Patent No. 6,237,565) has been placed in Ford's U-137/P131 program," and "Teleflex has shipped approximately 150,000 adjustable pedal units to Ford for the U-137/P-131 program." These facts, even if accepted at face value, are clearly insufficient "to override a determination of obviousness based on primary considerations." <u>Ryko</u>, 950 F.2d at 719 (affirming award of summary judgment under 35 U.S.C. § 103(a), notwithstanding that "secondary consideration weighted in favor of" the patentee).

In the first place, the '565 Patent describes two embodiments of a vehicle control pedal apparatus, one comprising a "cable attachment member 78" for actuating an engine throttle cable, and second comprising an optional "electronic throttle control 28". The embodiment comprising a "cable attachment member 78" is <u>not</u> protected by '565 Patent claim 4. Teleflex has presented no evidence identifying its sales of pedal systems

embodying the subject matter of asserted claim 4, as distinct from cable-actuated accelerator pedal assemblies that are described but not claimed in the '565 Patent.[13]

Equally important, "secondary" considerations such as "commercial success" are "relevant only in a close case where all other proof leaves the question of invention in doubt." Dow Chem. Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 330 (1945). This is not such a case. Cf. Sakraida, 425 U.S. at 282-83 (holding patent invalid under 35 U.S.C. § 103(a) notwithstanding "commercial success" of alleged "inventions"); Anderson's-Black Rock, 396 U.S. at 60 (same).

## CONCLUSION

For the reasons set forth above and in KSR's Main Brief, the Court should grant summary judgment dismissing the sole surviving claim of the Complaint

Dated: August 26, 2003

Respectfully submitted,
DICKINSON WRIGHT PLLC

By _____
Kenneth J. McIntyre (P17450)
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
(313) 223-3500

JAMES W. DABNEY
Pennie & Edmonds LLP
Attorneys for Defendant
1155 Avenue of the Americas
New York, NY 10036
(212) 790-9090

---

[13] Teleflex's failure to claim the cable-actuating version of the pedal system described in the '565 Patent demonstrates, in dramatic fashion, that the purported "invention" of Mr. Engelgau consisted of nothing more than adding an off-the-shelf pedal position sensor to an otherwise old and (in 1999) clearly unpatentable design.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED